**MOTOROLA CREDIT CORPORATION and Nokia Corporation, Plaintiffs,**

v.

**Kemal UZAN, et al., Defendants.**

**No. 02 Civ.666 JSR.**

United States District Court, S.D. New York.

Sept. 12, 2003.

See, also, 2003 WL 203011.

Steven Davidson, Gordon M. Clay, John O'Connor, Howard Stahl, Steptoe & Johnson, LLP, Washington, DC, for Motorola.

Mishell B. Kneeland, Paul Fishman, Friedman Kaplan Seiler & Adelman LLP, New York City, Allison G. Kort, Jason Brown, Holland & Knight, LLP, New York City, for Nokia.

Robert F. Serio, Mark Holton, Prasanth R. Akkapeddi, Gibson, Dunn & Crutcher, New York City, David Rosenberg, Marcus, Rosenberg & Diamond, LLP, New York City, Stanley R. Mortenson, James R. Heavner, Jr., Baker Botts LLP, Washington, DC, for Cem Uzan, Murat Uzan.

Kenneth M. Bailo, Emmet, Marvin & Martin, LLP, New York City, for Kemal Uzan, Cem Cengiz, Murat Hakan Uzan, Melahut Uzan, Aysegul Akay.

Brian V. Otero, Hunton & Williams, New York City, Jennifer Culotta, David F. Geneson, Hunton & Williams, Washington, DC, for Keith Bane.

Andrew N. Vollmer, Andrew Weissman, Wilmer, Cutler & Pickering, Washington, DC, for ABN AMRO Bank, N.V.

Timothy P. Harkness, Davis Polk & Wardwell, New York City, for Deloitte & Touche LLP.

## MEMORANDUM ORDER

RAKOFF, District Judge.

Plaintiffs seek to apply $125,000 of defendants' money currently in plaintiffs' possession toward partial satisfaction of an award of $177,647.59 in attorneys fees and expenses that the Hon. Frank Maas, United States Magistrate Judge, directed be paid to plaintiffs from defendants. *See* Judge Maas's Memorandum Decision dated January 27, 2003 ("January 27 Decision").

The $125,000 was originally advanced to plaintiffs in connection with defendants' request, made first to the undersigned and then to Judge Maas (to whom supervision of much of the discovery in this case was assigned), that certain depositions of the individual defendants occur in Turkey or other suitable locations in Europe rather than in the United States. The $125,000 was intended to defray plaintiffs' added expenses occasioned by this accommodation. Defendants, however, after numerous delays and broken promises, failed to appear for their depositions and to comply with related discovery orders, failures that Judge Maas determined to have occurred "knowingly and without justification." *See* January 27 Decision at 8. Accordingly, Judge Maas awarded plaintiff Motorola

Credit Corporation ("Motorola") $128,411.59 and plaintiff Nokia Corporation ("Nokia") $49,236.00, to compensate them for their time spent preparing for the aborted depositions, as well as for related expenses such as the costs of translating and duplicating documents to be read at the depositions, the costs associated with travel cancellations, etc. *See id.* at 9–13.

Defendants did not appeal Judge Maas's January 27 Decision within the 10 days prescribed by Federal Rule of Civil Procedure 72(a), or, for that matter, thereafter. Accordingly, the January 27 Decision is now final and unappealable, *see id.,* and defendants may not contest on the merits Judge Maas's direction that they pay plaintiffs $177,647.59. Since defendants have not paid any portion of this award, it is entirely appropriate that the $125,000 originally transferred to plaintiffs to defray the costs of taking defendants' depositions should be applied to the costs occasioned by defendants' failure to appear for their depositions, and defendants have failed to raise any colorable argument to the contrary except as respects jurisdiction.

As to jurisdiction, they argue: (1) that this Court has no jurisdiction to consider the instant motion because final judgment in this case, entered on July 31, 2003, is presently on appeal, and (2) that Judge Maas lacked jurisdiction to grant the underlying award embodied in the January 27 Decision because at the time he did so defendants' interlocutory appeal from this Court's refusal to compel arbitration of the claims made in this case was pending in the Court of Appeals.[1]

■ As to the first argument, it is well-settled that an appeal, even from a final judgment, does not divest the District Court of jurisdiction over essentially collaterally matters such as awarding or collecting attorneys fees and expenses. *See Toliver v. County of Sullivan,* 957 F.2d 47, 49 (2d Cir.1992) (per curiam); *Yurman Designs, Inc. v. PAJ Inc.,* 2001 WL 797474, *2 (S.D.N.Y.2001) ("fee awards are collateral to an underlying judgment (and thus the district court is not divested of jurisdiction to award fees even when a notice of appeal has been filed)"); *Satcom International Group PLC v. Orbcomm International Partners, L.P.,* 55 F.Supp.2d 231, 234 (S.D.N.Y.1999); *see also Chambers v. Time Warner,* No. 00 Civ. 2839, 2003 WL 1107790 (S.D.N.Y., March 12, 2003). Here, the instant application, being collateral to the final judgment and involving collection of an attorneys fee award that is, as noted, itself unappealable, is properly before this Court.[2]

---

**1.** The common use of the term "jurisdiction" in differentiating what aspects of a case, if any, remain with a lower court following various kinds of appeals to a higher court may be somewhat misleading, in that—as suggested by the fact that a party may waive its right to arbitration by participating in extensive pretrial discovery and motion practice, *see PPG Indus. v. Webster Auto Parts Inc.,* 128 F.3d 103, 107 (2d Cir.1997)—what is frequently involved here is not a question of a court's power or authority but other, prudential considerations. *United States v. Rodgers,* 101 F.3d 247, 251 (2d Cir.1996). As one court has stated, in words applicable here, "[t]he word jurisdiction is popular in the lexicon of lawyers and judges, so popular that its chameleon quality sometimes slips from our grasp.... If one steps out of the fog law books and judicial decisions sometimes generate, however, it should be apparent that the jurisdictional question tendered here is not a question of jurisdiction writ large." *United States v. Kember,* 648 F.2d 1354, 1357–58 (D.C.Cir.1980).

**2.** The fact that defendants' conduct leading to the January 27 Decision was referred to by this Court in connection with its determination that defendants were in contempt of court, *see* Opinion and Order dated July 31, 2003 ("July 31 Order") at 146–47—a determination that defendants are presently appealing—is irrelevant to the instant motion, which does not depend on any finding of contempt. Also, although the issue of Judge Maas's juris-

■ The second argument—that an interlocutory appeal from a district court's refusal to compel arbitration automatically divests the district court of jurisdiction to proceed with the case—has already been resolved adversely to defendants in this case, not just by this Court but also by the Court of Appeals. It is true that, as a general matter, the Circuit Courts are divided on the extent to which an interlocutory appeal from the denial of compelled arbitration divests a district court of jurisdiction. *Compare Britton v. Co–Op Banking Group,* 916 F.2d 1405, 1412 (9th Cir. 1990) (holding there is no divestiture of jurisdiction) *with Bradford–Scott Data Corp., Inc. v. Physician Computer Network,* 128 F.3d 504, 507 (7th Cir.1997) (finding divestiture) *and Bombadier Corp. v. National Railroad Passenger Corp.,* 2002 WL 31818924 (D.C.Cir.2002) (per curiam) (finding divestiture where appeals are non-frivolous). However, the Second Circuit, while not entirely defining its position in this regard, has at least made clear that there are some circumstances where such an appeal does not divest the district court of jurisdiction to continue discovery and, indeed, to proceed to trial. *See In re Salomon Inc. Shareholders' Derivative Litigation,* 68 F.3d 554 (2d Cir.1995) (affirming district court's decision not to stay proceedings pending the appeal but rather to proceed to trial).

What is less clear is what these circumstances are—as well as whether the determination of whether or not such circumstances exist (and whether they are sufficient to warrant the district court's proceeding with the case) is, as *Britton* holds, a "proper subject for the exercise of discretion by the Trial Court." *Britton,* 916 F.2d at 1412. At a minimum, there is no divestiture where the appeal is frivolous. *See Cendant Corporation v. Forbes,* 72 F.Supp.2d 341, 343 (S.D.N.Y. 1999); *Satcom International Group PLC v. Orbcomm International Partners, L.P.,* 55 F.Supp.2d 231, 236 (S.D.N.Y.1999). But as this Court noted in *Cendant,* the admittedly sparse caselaw in this Circuit suggests that in appropriate cases there may be other considerations that would properly warrant a district court's exercising its discretion to deny a stay of proceedings while an appeal from denial of arbitration is pending—"such as considerations of judicial economy, avoidance of conflicting or piecemeal determinations, and the like." *Cendant,* 72 F.Supp.2d at 343.

Here, the underlying circumstances strongly favored the Court's exercising its discretion to deny a stay of proceedings. On March 20, 2002, a full two months after the start of this litigation, defendants first moved to compel arbitration. *See* Memorandum of Law in Support of Defendants' Motion to Compel Arbitration, dated March 20, 2002. Although they were not themselves signatories to any arbitration agreement with plaintiffs, defendants sought to compel plaintiffs to arbitrate the instant disputes pursuant to plaintiffs' arbitration agreements with non-party Telsim Mobil Telekomunikayson Hizmetleri A.S. ("Telsim"); but even then, defendants did not formally confirm that they would be bound by any such arbitration until many months later. *See* Transcript of Oral Argument Before the Court of Appeals, dated August 5, 2002, at 38–39. Furthermore, defendants, once having filed their motion to arbitrate, did not press the District Court for early resolution of that motion or seek to stay proceedings while that motion was *sub judice.*

---

diction to proceed with discovery, discussed *infra,* may be before the Court of Appeals for other purposes, that does not prohibit this Court from addressing that issue with respect to a motion that this Court still retains jurisdiction to hear.

Rather, they not only proceeded with substantial discovery but fully participated in a six-day preliminary injunction hearing directed to the underlying merits, a two-day contempt hearing, and much else. *See* July 31 Order at 45–51 (recounting prior proceedings).

Thereafter, by Opinion dated May 21, 2002, *see id.* at 22–23, by Order dated September 30, 2002, and by Memorandum Order dated October 15, 2002, *see id.* at 6, the Court denied the various permutations of defendants' motion (which chiefly sought to incorporate this lawsuit into certain purported arbitrations, commenced against plaintiffs by Telsim and by certain third parties, that this Court had previously enjoined defendants from pursuing). After appealing the latter two of these orders to the Court of Appeals, defendants then sought from this Court a stay of the entire proceedings pending determination of that appeal. *See* Defendants' Letter dated October 21, 2002. Although this Court, in denying such a stay, held that defendants' appeal (as then cast) was "frivolous," Memorandum Order of October 28, 2002 at 2,[3] it separately determined that, in any event, the proposed stay was part of an improper attempt to derail these proceedings through artificial arbitrations and the

like. *Id.* "In such circumstances, a stay would only serve to advance the very machinations for which defendants have previously been found in contempt of court." *Id.*[4]

Read in context, therefore, the Court effectively found that the stay would impede, rather than advance, the interests of judicial economy, a matter that the District Court, in the exercise of its discretion, was in the best position to determine. Indeed, even if the matter had ultimately been referred to arbitration, essentially the same discovery would have had to occur as defendants were at this point willingly undertaking before this Court. Moreover, on September 6, 2002, *i.e.,* shortly prior to seeking the stay, defendants represented to Judge Maas that they intended "to engage totally and move forward" with litigation in this Court. January 27 Decision at 3. Further still, even if the case were ultimately held arbitrable, the Court still retained jurisdiction to issue injunctive relief in aid of arbitration; accordingly it made sense to promptly adjudicate plaintiffs' request for final injunctive relief, which at this point had only been determined preliminarily. Given, as the Second Circuit has noted, that the purpose of any divestiture rule involving interlocutory ap-

---

**3.** As the Court later explained in the July 31 Order, at 27–28, its finding in the Memorandum Order of October 28, 2002 that defendants' appeal from the denial of their motion to compel arbitration was "frivolous" was based in part on the fact that many of the transactions on which plaintiffs' RICO claims were predicated—such as the defendants' filing of false criminal charges against plaintiffs' executives—were not conceivably the subject of the arbitration agreements on which defendants sought to rely, *i.e.,* the agreements between plaintiffs and non-party Telsim. Defendants, however, sought arbitration of the entire lawsuit including the RICO claims (which, indeed, were a primary focus of the litigation as it then stood). Later, of course, the Court of Appeals dismissed the RICO claims as unripe. *See Motorola Credit*

*Corp. v. Uzan,* 322 F.3d 130, 135 (2d Cir. March 7, 2003). But even if the Court had therefore considered the stay motion without reference to the aforesaid transactions (which are less central to the non-RICO claims) and had in that altered context deemed the appeal arguably not frivolous, *see* Memorandum Order dated August 8, 2003 at 2, the Court would still have concluded that considerations of judicial economy warranted denial of the stay.

**4.** The Court expressly did not reach plaintiffs' still further contention that defendants had waived their right of arbitration, *see* Memorandum Order of October 28, 2002 at 1, but the argument is far from frivolous. *See PPG Indus.,* 128 F.3d at 107.

peals is to advance efficiency and judicial economy, not impede them, *see Rodgers,* 101 F.3d at 251, the situation presented thus required the Court to deny any stay and move forward with the litigation.

In any event, any doubt as to whether the Court could proceed with discovery and trial was then laid to rest by events in the Court of Appeals. Specifically, after this Court denied the stay pending defendants' appeal from the Court's denial of their motion to compel arbitration, the defendants, on November 4, 2002, sought an emergency stay of the lawsuit from the Court of Appeals, *see* Emergency Motion to Stay Pending Appeal of Portions of the District Court's Order of September 30 and Memorandum Order of October 15, 2002, dated November 4, 2002. In their motion, defendants made plain that discovery was proceeding and that the case was firmly set for trial in February, 2003, and sought to stay both discovery and trial. *See* Defendants–Appellants' Memorandum of Law in Support of Their Emergency Motion For: (1) A Stay Pending Appeal of Portions of the District Court's Order of September 30, 2002 and Memorandum Order of October 15, 2002 and (2) An Expedited Appeal at 2. The Court of Appeals, however, declined to rule on the motion, thus allowing the proceedings to continue before this Court. After discovery was completed but before the trial began, de-

fendants thereupon addressed a letter to the Court of Appeals, renewing their application for a stay in light of the pending trial, *see* Letter dated February 5, 2003; but once again the Court of Appeals declined to act. This was in notable contrast, moreover, to action the Court of Appeals had taken with respect to another, interlocutory appeal by defendants, from this Court's enhancement of the fines levied for defendants' contempt of court, where the Court of Appeals had granted a stay of the imposition of the enhanced fines. *See Motorola,* 322 F.3d at 137–38.

For all practical purposes, therefore, the Court of Appeals denied defendants' motion to stay discovery and the trial. Indeed, both sides, in the continued proceedings before this Court, recognized as much.[5] Thus when the matter came to trial in February, defendants' stated reason for not participating was two Turkish injunctions they had procured (and that were subsequently overturned), not the pending appeal or absence of jurisdiction while it was pending. *See* July 31 Order at 8. Accordingly, here, as in *Britton,* "[w]hatever merit there may have been to [defendants'] request for the court, in the exercise of its discretion, to grant a stay of the district court proceedings pending appellate review of the arbitrability issue, that question was resolved [adversely to defendants] by this court's [*i.e.,* the court of appeals'] refusal to grant the stay." *Britton,* 916 F.2d at 1412 n. 8.[6]

5. For example, in a pre-trial hearing on January 3, 2003, this Court asked whether it was safe to assume that "the Court of Appeals is fully aware of the trial schedule that this [C]ourt has set, so there is implicit in the whole situation, and especially given the various requests for emergency relief that [were] made at various times by the defendants, a basis on which this Court can with some confidence move forward...." Transcript of January 3, 2003, at 17. To this query, plaintiffs' counsel responded that "the Court of Appeals absolutely knows because the defendants used [as a primary argument for a stay] ... the imminence of the trial date before the

[C]ourt. Yes, your Honor, the Court of Appeals is fully aware of where this case has been and the trial date that has been set in this case." *Id.* at 18. The defendants, tellingly, offered no contrary argumentation or evidence, so this Court justifiably relied on the Court of Appeals' failure to grant defendants' proposed stay in making its determination to proceed to trial.

6. As to the trial, moreover, it may be noted that no verdict was rendered until after the Court of Appeals remanded the case, for all purposes, in March, 2003 and after the Turkish appeals court reversed the aforesaid in-

In sum, it is clear that the Court had jurisdiction when Judge Maas issued his order and has it now. Accordingly, the plaintiffs' request to apply the $125,000 of defendants' money currently in plaintiffs' possession to the fees and expenses that Judge Maas awarded them in the January 27 Order is hereby granted.[7]

SO ORDERED.

junctions. Further still, when the Court rendered its trial verdict, it explicitly based that decision primarily on the evidence that had been presented at the time of the preliminary injunction hearing, well before the defendants filed their interlocutory appeal. *See* August 8 Order at 5–6.

7. Plaintiffs presumably can resolve between themselves how much of the $125,000 should be applied to what each is separately due under the January 27 Decision, but should then inform the Court and defendants of that allocation.