[911 NE2d 825, 883 NYS2d 763]

Lee N. Koehler, Appellant, v The Bank of Bermuda Limited, Respondent.

Argued April 28, 2009; decided June 4, 2009

## POINTS OF COUNSEL

*Paul F. Newhouse,* of the Maryland bar, admitted pro hac vice, for appellant. I. New York courts have express statutory authority to order delivery of assets of the judgment debtor located outside New York. (*Warner v Fourth Natl. Bank,* 115 NY 251; *Simpson v Jersey City Contr. Co.,* 165 NY 193; *Shaffer v Heitner,* 433 US 186; *Starbare II Partners v Sloan,* 216 AD2d 238; *Miller v Doniger,* 28 AD3d 405; *Gryphon Dom. VI, LLC v APP Intl. Fin. Co., B.V.,* 41 AD3d 25; *Morgenthau v Avion Resources Ltd.,* 49 AD3d 50; *ABKCO Indus. v Apple Films,* 39 NY2d 670; *Matter of National Union Fire Ins. Co. of Pittsburgh, Pa. v Advanced Empl. Concepts,* 269 AD2d 101; *Fleming v Gray Mfg. Co.,* 352 F Supp 724.) II. New York law authorizes a turnover order covering assets held outside the court's territorial jurisdiction so long as personal jurisdiction and a New York situs exist. (*Alliance Bond Fund, Inc. v Grupo Mexicano De Desarrollo, S.A.,* 190 F3d 16; *ABKCO Indus. v Apple Films,* 39 NY2d 670; *Simpson v Jersey City Contr. Co.,* 165 NY 193; *Warner v Fourth Natl. Bank,* 115 NY 251; *Suffolk Auto Liquidators v Eastern Auto Auction,* 74 Misc 2d 411; *Lutes v Shenk,* 285 App Div 416; *Inter-Regional Fin. Group, Inc. v Hashemi,* 562 F2d 152; *Fleming v Gray Mfg. Co.,* 352 F Supp 724; *Fidelity Partners, Inc. v First Trust Co. of N.Y.,* 58 F Supp 2d 55; *In re Feit & Drexler, Inc.,* 760 F2d 406.)

*Friedman Kaplan Seiler & Adelman LLP,* New York City (*Daniel B. Rapport, Robert J. Lack* and *Jason C. Rubinstein* of counsel), for respondent. I. A New York court cannot order a bank, as garnishee, to deliver into the state stock certificates owned by a judgment debtor, or cash equal to their value. (*National Broadway Bank v Sampson,* 179 NY 213; *Hotel 71 Mezz Lender LLC v Falor,* 58 AD3d 270; *ABKCO Indus. v Apple Films,* 39 NY2d 670; *Carr v Corcoran,* 44 App Div 97; *Capital*

*Distribs. Servs., Ltd. v Ducor Express Airlines, Inc.*, 440 F Supp 2d 195; *Fidelity Partners, Inc. v Philippine Export & Foreign Loan Guar. Corp.*, 921 F Supp 1113; *Intercontinental Credit Corp. Div. of Pan Am. Trade Dev. Corp. v Roth*, 152 Misc 2d 751; *Overby v Gordon*, 177 US 214; *Hanson v Denckla*, 357 US 235; *Plimpton v Bigelow*, 93 NY 592.) II. A. David Dodwell's stock certificates are the only property at issue on this appeal. (*ABKCO Indus. v Apple Films*, 39 NY2d 670; *Glassman v Hyder*, 23 NY2d 354; *Simpson v Jersey City Contr. Co.*, 165 NY 193; *Warner v Fourth Natl. Bank*, 115 NY 251; *Lutes v Shenk*, 285 App Div 416; *Suffolk Auto Liquidators v Eastern Auto Auction*, 74 Misc 2d 411; *Fidelity Partners, Inc. v Philippine Export & Foreign Loan Guar. Corp.*, 921 F Supp 1113.)

*Sullivan & Cromwell LLP*, New York City (*H. Rodgin Cohen, Bruce E. Clark, Michael M. Wiseman, Daniel A. Goldschmidt* and *Norman R. Nelson* of counsel), for Clearing House Association L.L.C., amicus curiae. I. Article 52 of the CPLR does not empower a New York court to order a garnishee bank to deliver stock certificates located outside of the jurisdiction into the state. (*Gryphon Dom. VI, LLC v APP Intl. Fin. Co., B.V.*, 41 AD3d 25; *Starbare II Partners v Sloan*, 216 AD2d 238; *Hotel 71 Mezz Lender LLC v Falor*, 58 AD3d 270; *National Broadway Bank v Sampson*, 179 NY 213; *ABKCO Indus. v Apple Films*, 39 NY2d 670; *Commercial Credit Corp. v Young*, 258 App Div 323; *Miller v Doniger*, 28 AD3d 405; *Shaffer v Heitner*, 433 US 186; *Lenchyshyn v Pelko Elec.*, 281 AD2d 42; *Fine v Spierer*, 109 AD2d 611.) II. The Court should not answer the certified question in a manner that conflicts with the separate entity rule. (*Cronan v Schilling*, 282 App Div 940; *Matter of National Union Fire Ins. Co. of Pittsburgh, Pa. v Advanced Empl. Concepts*, 269 AD2d 101; *Digitrex, Inc. v Johnson*, 491 F Supp 66; *Limonium Mar., S.A. v Mizushima Marinera, S.A.*, 961 F Supp 600; *Fidelity Partners, Inc. v Philippine Export & Foreign Loan Guar. Corp.*, 921 F Supp 1113; *Motorola Credit Corp. v Uzan*, 288 F Supp 2d 558.) III. An affirmative answer to the certified question would have serious adverse practical consequences. (*Gryphon Dom. VI, LLC v APP Intl. Fin. Co., B.V.*, 41 AD3d 25; *Islamic Republic of Iran v Pahlavi*, 62 NY2d 474; *O'Connell v Corcoran*, 1 NY3d 179.) IV. The Court should answer the certified question in the negative to avoid unnecessary conflicts with the laws of other jurisdictions. (*International Multifoods Corp. v Commercial Union Ins. Co.*, 98 F Supp 2d 498; *Ehrlich-Bober & Co. v University of Houston*, 49 NY2d 574.)

PIGOTT, J.

The United States Court of Appeals for the Second Circuit, by certified question, asks us to decide whether a court sitting in New York may order a bank over which it has personal jurisdiction to deliver stock certificates owned by a judgment debtor (or cash equal to their value) to a judgment creditor, pursuant to CPLR article 52, when those stock certificates are located outside New York. We answer the certified question in the affirmative.

I.

Sixteen years ago, on June 4, 1993, the United States District Court for the District of Maryland awarded Lee N. Koehler, a citizen of Pennsylvania, a default judgment in the sum of $2,096,343 against his former business partner, A. David Dodwell. Koehler duly registered the Maryland judgment in the United States District Court for the Southern District of New York. At that time, Dodwell, a resident of Bermuda, owned stock in a Bermuda corporation, of which he and Koehler had been shareholders, and certificates representing Dodwell's shares were in the possession of the Bank of Bermuda Limited (BBL), and located in that country. Dodwell had pledged the shares to BBL as collateral for a loan.

On October 27, 1993, Koehler filed a petition against BBL in the United States District Court for the Southern District of New York, seeking "payment or delivery of property of judgment debtor," and citing CPLR article 52. Koehler served the petition upon an officer of the Bank of Bermuda (New York) Limited, which he claimed to be a New York subsidiary and agent of BBL. On October 29, 1993, the District Court ordered BBL to deliver the stock certificates, or monies sufficient to pay the judgment, to Koehler. It is this turnover order that is the subject of the certified question before us.

BBL argued before the District Court that service upon the New York bank did not subject BBL to the personal jurisdiction of the court. Although this jurisdictional issue was the subject of litigation in federal court for some 10 years, BBL eventually consented, by letter dated October 9, 2003, to the personal jurisdiction of the court as of the time that Koehler had commenced the proceeding.

In 2004, BBL revealed that the stock certificates were no longer in its possession. The obligations for which BBL had held

the certificates as collateral had been satisfied and BBL—despite the District Court's turnover order—had transferred the stock to a Bermudan company existing for Dodwell's benefit in July 1994. On March 9, 2005, the District Court dismissed Koehler's petition, on several grounds, including that the federal court had no in rem jurisdiction over Dodwell's shares (2005 WL 551115, 2005 US Dist LEXIS 3760 [SD NY 2005]). In doing so, the District Court relied on the principle that a New York court cannot attach property that is not within the state.

Koehler appealed to the Second Circuit, which observed that New York law does not make clear whether a court sitting in New York has the authority under CPLR 5225 (b) to order a defendant, other than the judgment debtor himself, to deliver assets into New York, when the court has personal jurisdiction over the defendant but the assets are not located in New York. The Second Circuit, finding no controlling precedent from our Court, certified this dispositive jurisdictional question to us (544 F3d 78 [2008]).

## II.

CPLR article 52 governs the enforcement of money judgments and orders directing the payment of money. By contrast, prejudgment attachment is governed by CPLR article 62. Enforcement proceedings and attachment proceedings, while similar in many ways, differ fundamentally in respect to a court's jurisdiction. While prejudgment attachment is typically based on jurisdiction over property, postjudgment enforcement requires only jurisdiction over persons.

Article 52 authorizes a judgment creditor to file a motion against a judgment debtor to compel turnover of assets or, when the property sought is not in the possession of the judgment debtor himself, to commence a special proceeding against a garnishee who holds the assets. CPLR 5225, the provision applicable here, supplies judgment creditors with a device known as a "delivery order" or "turnover order." With respect to garnishees, CPLR 5225 (b) allows a New York court to issue a judgment ordering a party to deliver the property in which the judgment debtor has an interest, or to convert it to money for payment of the debt. "[W]here it is shown that the judgment debtor is entitled to the possession of such property . . . , the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor" (CPLR 5225 [b]). Disobedience of a turnover order is contempt of court and punishable as such.

The requirement that the judgment creditor proceed against the garnishee, rather than by a device operating on the property alone, recognizes the possibility that the garnishee, or a fourth party, may assert its own interests in the property.

> "If there are any other claimants to the property or money involved, they can be allowed to intervene, if, indeed, the judgment creditor has not already joined them in the first place, or the garnishee interpleaded them. . . . The special proceeding, in short, can be converted into a full-fledged test of precisely whom the disputed property or debt belongs to . . . ." (Siegel, NY Prac § 510, at 868 [4th ed].)

By contrast, an article 62 attachment proceeding operates only against *property*, not any person. By means of attachment, a creditor effects the prejudgment seizure of a debtor's property, to be held by the sheriff, so as to apply the property to the creditor's judgment if the creditor should prevail in court. Attachment simply keeps the debtor away from his property or, at least, the free use thereof; it does not transfer the property to the creditor. It is frequently used when the creditor suspects that the debtor is secreting property or removing it from New York and/or when the creditor is unable to serve the debtor, despite diligent efforts, even though the debtor would be within the personal jurisdiction of a New York court (*see* CPLR 6201). Attachment has also been used to *confer* jurisdiction. When a debtor is neither a domiciliary nor a resident of New York—so that the creditor cannot obtain personal jurisdiction of the debtor—but owns assets in New York, courts have exercised jurisdiction over the debtor. This quasi in rem jurisdiction is subject to the due process restrictions outlined by the United States Supreme Court in *Shaffer v Heitner* (433 US 186 [1977]; *see generally* Siegel, NY Prac §§ 104, 313, 314 [4th ed]).

In short, article 52 postjudgment enforcement involves a proceeding against a person—its purpose is to demand that a person convert property to money for payment to a creditor—whereas article 62 attachment operates solely on property, keeping it out of a debtor's hands for a time. We approach the certified question with these differences in mind.

### III.

It is well established that, where personal jurisdiction is lacking, a New York court cannot attach property not within its jurisdiction. "[I]t is a fundamental rule that in attachment

proceedings the *res* must be within the jurisdiction of the court issuing the process, in order to confer jurisdiction" (*National Broadway Bank v Sampson*, 179 NY 213, 223 [1904], quoting *Douglass v Phenix Ins. Co. of Brooklyn, N. Y.*, 138 NY 209, 219 [1893]; *accord Hotel 71 Mezz Lender LLC v Falor*, 58 AD3d 270, 273 [1st Dept 2008]; *Matter of National Union Fire Ins. Co. of Pittsburgh, Pa. v Advanced Empl. Concepts*, 269 AD2d 101 [1st Dept 2000]). Significantly, "attachment suits partake of the nature of suits *in rem*, and are distinctly such when they proceed without jurisdiction having been acquired of the person of the debtor in the attachment" (*Douglass*, 138 NY at 218). But it is equally well established that "[h]aving acquired jurisdiction of the person, the court[ ] can compel observance of its decrees by proceedings *in personam* against the owner within the jurisdiction" (*id.* at 219). The certified question concerns the latter process.

CPLR article 52 contains no express territorial limitation barring the entry of a turnover order that requires a garnishee to transfer money or property into New York from another state or country. It would have been an easy matter for the Legislature to have added such a restriction to the reach of article 52 and there is no basis for us to infer it from the broad language presently in the statute. Moreover, we note that the Legislature has recently amended CPLR 5224 so as to facilitate disclosure of materials that would assist judgment creditors in collecting judgments, when those materials are located outside New York. The 2006 amendment adds a subdivision that expressly allows the securing of out-of-state materials by in-state service of a subpoena on the party in control of the materials.\* Recent legislation thus supports our conclusion that the Legislature intended CPLR article 52 to have extraterritorial reach.

The First Department of the Appellate Division has expressly held that judgment debtors can be ordered to turn

---

\* Specifically, subdivision (a-1) provides that

"[a] subpoena duces tecum authorized by this rule and served on a judgment debtor, or on any individual while in the state, or on a corporation, partnership, limited liability company or sole proprietorship doing business, licensed, qualified, or otherwise entitled to do business in the state, shall subject the person or other entity or business served to the full disclosure prescribed by section fifty-two hundred twenty-three of this article whether the materials sought are in the possession, custody or control of the subpoenaed person, business or other entity *within or without the state*" (emphasis added).

over out-of-state assets under CPLR article 52 (*see Gryphon Dom. VI, LLC v APP Intl. Fin. Co., B.V.*, 41 AD3d 25 [1st Dept 2007], *lv denied* 10 NY3d 705 [2008]; *see also Miller v Doniger*, 28 AD3d 405 [1st Dept 2006]; *Starbare II Partners v Sloan*, 216 AD2d 238 [1st Dept 1995]). "[T]he explicit rationale was that the court could order the defendant judgment debtor to turn over property because it had personal jurisdiction over the defendant" (*Gryphon*, 41 AD3d at 31, citing *Starbare*, 216 AD2d at 239). Recently, the First Department endorsed the position that "New York courts have the power to command a garnishee present in the state to bring out-of-state assets under the garnishee's control into the state" (*Morgenthau v Avion Resources Ltd.*, 49 AD3d 50, 54 [1st Dept 2007], *mod on other grounds* 11 NY3d 383 [2008]).

As that court noted, the key to the reach of the turnover order is personal jurisdiction over a particular defendant. "[A] turnover order merely directs a defendant, over whom the New York court has jurisdiction, to bring its own property into New York" (*Gryphon*, 41 AD3d at 31). A New York court has the authority to issue a turnover order pertaining to extraterritorial property, if it has personal jurisdiction over a judgment debtor in possession of the property. "As long as the debtor is subject to the court's personal jurisdiction, a delivery order can be effective even when the property sought is outside the state" (Siegel, NY Prac § 510, at 866 [4th ed]).

Indeed, BBL concedes that, when a judgment debtor is subject to a New York court's personal jurisdiction, that court has jurisdiction to order the judgment debtor to bring property into the state, because the court's authority is based on its personal jurisdiction over the judgment debtor. BBL argues, however, that when the judgment debtor—in this case Dodwell—is not within the personal jurisdiction of the New York court, the court's authority over the judgment debtor's property must be based on in rem jurisdiction, even if the garnishee is within the court's personal jurisdiction. Because we find no indication in CPLR 5225 that in rem jurisdiction is required in such circumstances, we disagree.

Both CPLR 5225 (a) and (b) provide that a judgment creditor may obtain an order from a New York court, requiring a defendant who is in possession or custody of money or other personal property in which a judgment debtor has an interest to turn over the property or pay the money to the judgment creditor. CPLR 5225 (a) applies when the property sought is in the

possession of the judgment debtor himself. CPLR 5225 (b) applies when the property is not in the judgment debtor's possession. The most significant difference between the subdivisions is that CPLR 5225 (a) is invoked by a *motion* made by the judgment creditor, whereas CPLR 5225 (b) requires a *special proceeding* brought by the judgment creditor against the garnishee. The reason for this procedural distinction is that the garnishee, not being a party to the main action, has to be independently subjected to the court's jurisdiction. But both CPLR 5225 (a) and (b) contemplate an order, directed at a defendant who is amenable to the personal jurisdiction of the court, requiring him to pay money or deliver property. Neither contemplates the situation in which attachment is typically sought—where it would be impossible or futile to protect a creditor's rights by means of an order issued to defendant (*see* CPLR 6201). In the attachment scenario, authority is conferred on the court in part or in whole by the situs of property within New York. In post-judgment enforcement, such in rem jurisdiction is not required. Bearing in mind the fundamental differences between enforcement and attachment discussed above, we hold that a New York court with personal jurisdiction over a defendant may order him to turn over out-of-state property regardless of whether the defendant is a judgment debtor or a garnishee.

## IV.

In short, the principle that a New York court may issue a judgment ordering the turnover of out-of-state assets is not limited to judgment debtors, but applies equally to garnishees. Consequently, we conclude that a court sitting in New York that has personal jurisdiction over a garnishee bank can order the bank to produce stock certificates located outside New York, pursuant to CPLR 5225 (b).

Accordingly, the certified question should be answered in the affirmative.

SMITH, J. (dissenting). The majority holds in substance that a judgment may be enforced by garnishment in New York if the garnishee is subject to New York jurisdiction, even though the judgment creditor, the judgment debtor and the property that the judgment creditor is trying to seize are all elsewhere. I would not read New York's garnishment statutes so expansively. Such a broad garnishment remedy is unsupported by any precedent in New York or, apparently, in any other jurisdiction. Its

policy implications are troubling, and it may well be unconstitutional in many of its applications.

The majority's holding opens a forum-shopping opportunity for any judgment creditor trying to reach an asset of any judgment debtor held by a bank (or other garnishee) anywhere in the world. If the bank has a New York branch—either one that is not separately incorporated, or a subsidiary with which the parent's relationship is close enough to subject the parent to New York jurisdiction—the judgment creditor, having registered the judgment in New York, can obtain an order requiring the asset to be delivered here. It is, apparently, irrelevant whether New York has any relationship with the judgment creditor, the judgment debtor or the dispute between them—indeed, in this case, so far as the record shows, no such relationship exists. And what a judgment creditor can do in New York, he can also do in Alabama, Alaska and 47 other states, if those states interpret their garnishment statutes as the majority interprets ours.

To offer this opportunity to judgment creditors seems to me a recipe for trouble. There may be competing claims to the asset, by parties who think they have as much right to it as the judgment creditor. It is obvious that claims against a single asset should be decided in a single forum—and almost equally obvious that that forum should be, as it traditionally has been, a court of the jurisdiction in which the asset is located. If any court with power over the garnishee can order the garnishee to change the asset's location, significant disruption in the process of deciding whose rights are superior seems inevitable. And the business of banking itself, for banks with offices in several states or countries, will also be disrupted. The Clearing House Association L.L.C., an association of banks operating in New York and many other domestic and international jurisdictions, has submitted an amicus brief predicting for its members and other banks significant administrative burdens, and risks of being subject to conflicting adjudications, resulting from the rule the majority now adopts. These fears may be exaggerated, but it seems unwise to put that question to the test.

It would not matter, of course, whether the majority's rule were wise or unwise if our Legislature had enacted it, or if our precedents required us to follow it. But neither is true. The relevant statutes, CPLR 5201 (b) (defining "property") and 5225 (b) (relating to payment or delivery of property not in the possession of the judgment debtor), say nothing about the

extraterritorial effects of garnishment proceedings. The majority points out that the statute relating to garnishment in judgment enforcement proceedings (CPLR 5225 [b]), unlike the statutes governing prejudgment attachment (CPLR art 62), operates in personam, rather than in rem; that difference does not suggest to me, however, that the Legislature intended the judgment-enforcement statute to have broader extraterritorial impact. Rather, I think the difference arises from the differing nature of prejudgment and postjudgment remedies: prejudgment remedies are designed, essentially, to freeze assets in place, while postjudgment remedies serve to compel their transfer and/or sale. An in rem approach is adequate for the former purpose, but an in personam remedy is better suited to the latter. Whether, and to what extent, the Legislature intended postjudgment remedies to reach property outside New York is a different question, one that the text of the statutes does not answer.

Nor has the judgment creditor cited any case, from New York or anywhere else, in which it has been held that a third-party garnishee that is independent of the judgment debtor may be compelled to bring assets into a state as part of judgment enforcement proceedings. The judgment creditor relies on several Appellate Division cases (*Gryphon Dom. VI, LLC v APP Intl. Fin. Co., B.V.*, 41 AD3d 25 [1st Dept 2007]; *Miller v Doniger*, 28 AD3d 405 [1st Dept 2006]; *Starbare II Partners v Sloan*, 216 AD2d 238 [1st Dept 1995]) in which judgment debtors (and, in *Miller*, family members who had received presumptively fraudulent transfers) were ordered to bring property into the state. But those cases are distinguishable. Judgment debtors who can control where property is located may put it out of reach in order to frustrate enforcement of the judgment, and it may well be reasonable to prevent or thwart such maneuvers by ordering the property brought into New York. But this reasoning does not apply to third parties like the Bank of Bermuda here, which had interests independent of the judgment debtor and was presumably dealing with him at arm's length.

The case that is perhaps most relevant to the question the Second Circuit has asked us seems to me to support a negative answer. In *United States v First Natl. City Bank* (321 F2d 14 [1963], *revd* 379 US 378 [1965]), the United States, trying to collect taxes owed by a Uruguayan corporation, sought an in personam order against a New York bank to freeze, pendente lite, assets of the Uruguayan company that were on deposit in the bank's branches outside the United States. The Second

Circuit rejected the government's claim, on the ground that "the garnishor obtains no greater right against the garnishee than the garnishee's creditor had" (321 F2d at 19). The Second Circuit held that, since the bank's depositor could not require payment in New York of the overseas deposits, the government could not do so either. The Supreme Court reversed, stressing that the case involved only a pendente lite injunction, but seemed to endorse the Second Circuit's basic theory: that the government's rights as creditor were limited to "whatever rights the debtor . . . may have" against the garnishee bank (379 US at 381). Here, the judgment creditor has made no attempt to show—and there is no apparent basis for concluding—that the judgment debtor could have compelled the Bank of Bermuda to deliver the shares to the judgment debtor in New York. *First National City Bank* implies that the judgment creditor should not be permitted to do what the judgment debtor could not do.

The majority's broad view of New York's garnishment remedy may cause it to exceed the limits placed on New York's jurisdiction by the Due Process Clause of the Federal Constitution. In *Shaffer v Heitner* (433 US 186, 212 [1977]), the Supreme Court held that "all assertions of state-court jurisdiction," whether labeled in personam, in rem or quasi in rem, must be evaluated according to the standards contained in *International Shoe Co. v Washington* (326 US 310 [1945])—i.e., according to "traditional notions of fair play and substantial justice" (326 US at 316, quoting *Milliken v Meyer*, 311 US 457, 463 [1940]). The Supreme Court has never had occasion to apply the *International Shoe* standard to judgment enforcement proceedings, but a footnote in *Shaffer* makes clear that the traditional in rem approach of such proceedings—permitting judgments to be enforced against property wherever it may be located—is constitutionally acceptable:

> "Once it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff, there would seem to be no unfairness in allowing an action to realize on that debt in a State where the defendant has property, whether or not that State would have jurisdiction to determine the existence of the debt as an original matter" (433 US at 210 n 36).

It is by no means equally clear that the novel in personam approach to judgment enforcement that the majority adopts today can meet the *International Shoe* standard. A somewhat similar

question was carefully considered in a recent decision of the Maryland Court of Special Appeals, *Livingston v Naylor* (173 Md App 488, 920 A2d 34 [2007]). In that case, a judgment creditor, a nonresident of Maryland, was trying to garnish in Maryland the wages of a judgment debtor, also a nonresident of Maryland, owed to him for work not done in Maryland. Though the garnishee was subject to Maryland jurisdiction, the court in *Livingston* held that there would be "a lack of fair play and substantial justice in permitting such wages to be garnished by operation of a Maryland court order" (173 Md App at 517, 920 A2d at 51).

In this case, as I have mentioned, the record discloses no New York contact with the parties or the dispute, except the amenability of the Bank of Bermuda, the garnishee, to personal jurisdiction in this state. I have serious doubt that that is enough contact under *International Shoe* to justify the enforcement of a non-New York judgment by a non-New York creditor against a non-New York debtor, to recover an asset that is located in Bermuda. The constitutional issue, of course, is not before us; the Second Circuit does not turn to us for rulings on federal constitutional law. The constitutional issue may not even be before the federal courts in this action, and if it had been raised there the judgment creditor might have been able to show enough New York contact to make the result he seeks constitutional. Still, I think the majority errs in interpreting New York's garnishment statutes in a way that will render them, as applied in future cases, subject to constitutional challenge.

I would answer the certified question no.

Chief Judge LIPPMAN and Judges CIPARICK and GRAFFEO concur with Judge PIGOTT; Judge SMITH dissents and votes to answer the certified question in the negative in a separate opinion in which Judges READ and JONES concur.

Following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the question by this Court pursuant to section 500.27 of the Rules of Practice of the Court of Appeals (22 NYCRR 500.27), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question answered in the affirmative.