OPINION OF THE COURT
Ellen M. Coin, J.
This is a motion to compel compliance with information subpoenas and subpoenas duces tecum issued upon a Lebanese penal judgment, which has been filed with the County Clerk of New York County as a Maryland sister-state money judgment.[1] *918 Plaintiff Adnan Abu Ayyash, a Lebanese native residing in the Kingdom of Saudi Arabia, obtained the judgment in 2005 in a lawsuit against defendant judgment debtor Rana Abdul Rahim Koleilat for massive fraud in the aftermath of the collapse of a Lebanese bank owned by plaintiff Ayyash (affirmation of Steven A. Cash, Esq. dated June 7, 2012, paras 10, 25, 27-28; exhibit 1-D thereto). After being incarcerated in Lebanon, Koleilat fled, ultimately to Brazil, where she now allegedly resides (Cash affirmation paras 11, 29-37).
On the heels of the entry of the judgment in this court, plaintiffs counsel served information subpoenas, subpoenas duces tecum and restraining notices upon certain New York branches and certain subsidiaries of financial institutions. Significantly, each information subpoena contained the follow certification, signed by counsel for Ayyash:
“I HEREBY CERTIFY that this information subpoena complies with Rule 5224 of the Civil Practice Law and Rules and Section 601 of the General Business Law that I have a reasonable belief that the party receiving this subpoena has in their possession information about the debtor that will assist the creditor in collecting the judgment.”
Plaintiff now moves by order to show cause to compel certain of those nonparty financial institutions to respond to his counsel’s information subpoenas and subpoenas duces tecum, to comply with the restraining notices and to pay a statutory penalty plus his attorney’s fees.
The Nonparty Financial Institutions[2]
Plaintiffs counsel issued his information subpoenas, subpoenas duces tecum and restraining notices to the following entities:
Banco do Brasil, S.A.,
Banco Santander, S.A.,
*919 Credit Agricole, S.A.,[3]
Credit Suisse (USA), Inc.,
Credit Suisse Group, AG,
HSBC Bank USA, N.A.,[4]
Itau Unibanco, S.A.,[5]
UBS, Inc.,[6] and
UBS AG.[7]
Banco do Brasil, S.A., New York Branch
Banco do Brasil, S.A., New York Branch responded to the subpoena duces tecum and information subpoena. In its responses it indicated that it held no accounts or other assets for the judgment debtor, and objected to the subpoenas to the extent that they purported to seek information and/or documents in the possession, custody or control of any other affiliate, branch, agency and/or office of the branch located in the State of New York or in any other jurisdiction on the grounds that the subpoenas were not served on such parties, that the production of such information or documentation might be subject to privacy and/or confidentiality laws of other jurisdictions and might result in a violation of such laws.
Banco Santander, S.A.
Banco Santander, S.A. is a bank organized under the laws of Spain, with its headquarters in Santander, Spain. It operates more than 14,000 branches in 40 countries (mem of law of Banco Santander, S.A. at 3).
By letters dated May 8, 2012 and June 29, 2012, Banco Santander, S.A., New York Branch responded to plaintiffs subpoenas (exhibits A-l, A-2 to affirmation of Alison R. Welcher dated July 11, 2012). The letters advised (1) that the New York Branch conducts a wholesale banking business for large corporations *920 and financial institutions and does not offer any accounts to individuals, and (2) that the New York Branch had performed a search of its electronic records covering the names of individuals and entities referenced in the subpoena, which produced no matches or responsive documents.
Credit Agricole, S.A.
Credit Agricole, S.A. is a French entity with its headquarters in France, which maintains no branches in the United States (affirmation of Krista M. Ellis dated July 11, 2012, para 3). Credit Agricole (Suisse), S.A. is a separate, indirect subsidiary of Credit Agricole, S.A. (Ellis affirmation para 4). Credit Agricole Corporate and Investment Bank (CIB) is a corporate and investment bank with offices in New York and is a subsidiary of Credit Agricole, S.A. (Ellis affirmation para 2). CIB is not a branch of Credit Agricole, S.A. or Credit Agricole (Suisse), S.A. and does not have access to information or accounts maintained at either entity (Ellis affirmation para 5).
CIB responded by letter to the subpoenas and restraining notice issued to Credit Agricole, S.A. (CASA) (exhibit E3 to Cash affirmation). It advised that CASA is an entity located in France, and contended that therefore the subpoenas and restraining notice were improperly served on CIB. In addition to its objection of improper service, CIB reserved its right to object to plaintiffs subpoenas and restraining notice on any other applicable ground, including foreign privacy, confidentiality or other laws.
Credit Suisse (USA), Inc, and Credit Suisse Group, AG
Credit Suisse Group, AG is a company organized under the laws of Switzerland with its principal place of business in Zurich, Switzerland (aff of Peter Kozlowski sworn to July 11, 2012, para 7).
Credit Suisse (USA), Inc. responded by letter to the subpoenas and restraining notice, advising plaintiffs counsel that it is a holding company and does not possess accounts or account information (exhibit F-3 to Cash affirmation). A legal assistant from the general counsel division-litigation of Credit Suisse Securities (USA), LLC informed plaintiffs counsel by email that “to the extent you are seeking information from locations outside the United States, consistent with Swiss banking laws, Credit Suisse Securities (USA), LLC, lacks access to the information requested.” (Id.) Plaintiffs affidavit of service indicated that service was made on Credit Suisse Group, AG at the same location as that of Credit Suisse (USA), Inc. (exhibit F2 to Cash affirmation).
*921 HSBC Bank USA, N.A.
HSBC Bank USA, N.A. is a bank with its principal office in New York. It is a subsidiary of HSBC USA Inc., an indirect, wholly-owned subsidiary of HSBC North America Holdings, Inc. (affirmation of Michael R. Mendola dated July 11, 2012, para 2).
HSBC Bank USA, N.A. is an indirect, wholly-owned subsidiary of HSBC Holdings pic, a bank holding company organized under the laws of the United Kingdom with its primary office in London, United Kingdom (Mendola affirmation para 3). HSBC Bank (Panama), S.A., HSBC Private Holdings (Suisse), S.A., HSBC Egypt, and HSBC Lebanon are separately incorporated subsidiaries of HSBC Holdings pic (Mendola affirmation para 4).
By letters dated April 12, April 13, and April 16, 2012 (collectively, exhibit G3 to Cash affirmation), the legal processing department of HSBC Bank USA, N.A., advised plaintiffs counsel that it was unable to locate any accounts with the information stated on the subpoena. In the April 16 letter it also noted that to the extent that plaintiffs counsel were to seek records from other HSBC entities, he should direct his subpoenas to such entities.
Itau Unibanco, S.A.
Itau Unibanco, S.A. is a bank organized under the laws of Brazil, headquartered in Sao Paulo, Brazil. It is the largest bank in South America, with more than 5,000 branches in 19 countries (mem of law of New York Branch of Itau Unibanco, S.A. at 3).
By letter dated April 16, 2012 (exhibit 13 to Cash affirmation), Itau Unibanco, S.A., New York Branch responded to plaintiffs subpoenas and restraining notice, advising that it had no accounts, relationship, or property of the judgment debtor.
UBS AG
UBS AG, New York Branch is a federal branch of UBS AG, a Swiss global financial service company headquartered in Switzerland (affirmation of Jennifer Hochberg dated July 19, 2012, para 2). UBS has branches in various countries, including U.S. branches in New York and Miami, Florida. Through its branches, subsidiaries and affiliates, it is present in more than 50 countries (Hochberg affirmation para 2). The employees of the New York branch of UBS AG do not have access, computerized or otherwise, to information regarding UBS AG customer accounts in branches outside of the United States (Hochberg affirmation para 4).
*922 By letter dated April 25, 2012 (exhibit L3 to Cash affirmation), UBS Financial Services Inc. responded to the subpoena, objecting on the grounds that it was vague and overbroad and, to the extent that it sought records from “any branch or office maintained in a foreign country,” that UBS AG (USA) did not have access to any records located at offices outside the United States. The letter advised plaintiffs counsel that should he seek records from any UBS entity located outside the United States, he must make application for same via the Hague Convention. Its objections aside, UBS stated that based on a search of its offices in the United States, it did not locate any responsive accounts for the judgment debtor.
Arguments in Opposition by the Nonparties
Branch Banks
Banco do Brasil, S.A., contending that it had fully complied with plaintiffs discovery demands, did not oppose the motion.
The New York branches of Banco Santander, S.A., Itau Unibanco, S.A., and UBS AG oppose the motion on essentially the same grounds. They argue that plaintiffs attempt to obligate a foreign bank to identify and attach foreign assets by service of process on its New York branch is ineffective and improper. In support of their contention, they rely on the separate entity rule, i.e., that “each branch of a bank is a separate entity, in no way concerned with accounts maintained by depositors in other branches or at the home office.” (Cronan v Schilling, 100 NYS2d 474, 476 [Sup Ct, NY County 1950].) They invoke policy considerations, including the interest in avoiding conflict and interference with foreign law, to support imposition of the rule in the circumstances here. Thus, they argue that to require the New York branches of these foreign banks to comply with plaintiffs requests might subject them (and those officers or employees so complying) to criminal penalties, including imprisonment, for such disclosure.[8]
Further, they ask that the court exercise its discretion to deny plaintiffs requests pursuant to CPLR 5240. They argue that *923 such denial is particularly appropriate in the circumstances here: plaintiff, a foreign citizen seeking to collect foreign assets to satisfy a foreign penal judgment, is attempting through discovery in the New York courts to launch a massive, multijurisdictional, international attachment effort rather than comply with the laws of the countries in which the assets are actually located.
The Subsidiaries
Credit Agricole Corporate and Investment Bank (a subsidiary of Credit Agricole, S.A.), Credit Suisse (USA), Inc. (a subsidiary of Credit Suisse Group, AG), and HSBC Bank USA, N.A. (a subsidiary of HSBC Holdings pic) all contend that they have complied in good faith with plaintiff’s discovery demands directed to each of them.
Moreover, as to assets of the judgment debtor which may be held by any foreign entity (e.g., parent or related corporations), they argue that plaintiff must seek discovery under the Hague Convention on Taking of Evidence Abroad in Civil or Commercial Cases. They rely on the body of New York law that holds that application of the Hague Convention is “virtually compulsory” when discovery is sought from a nonparty in a foreign jurisdiction. (Orlich v Helm Bros., 160 AD2d 135, 143 [1st Dept 1990]; Matter of Agusta, 171 AD2d 595, 596 [1st Dept 1991]; Intercontinental Credit Corp. Div. of Pan Am. Trade Dev. Corp. v Roth, 154 Misc 2d 639, 641 [Sup Ct, NY County 1991].) Moreover, like the New York branches, they argue that this court should decline to grant plaintiff’s request in the interest of international comity, noting the bank secrecy laws applicable to their foreign parent and related companies. Such laws, they argue, would unfairly expose their related companies to criminal, civil and regulatory sanctions.
Discussion
In his requests, plaintiff asks that the nonparty financial institutions identify, produce materials relating to, and freeze assets, including those held by “any branch or office maintained in a foreign country.” (Attachment A to the information subpoenas, subpoenas duces tecum and restraining notices.)
To the extent that he seeks information pursuant to the subpoenas duces tecum, plaintiff relies on the 2006 amendment *924 to the CPLR which added section 5224 (a-1). The new rule provides that a subpoena duces tecum served on a corporation doing business in the state “shall subject the . . . business served to the full disclosure prescribed by section fifty-two hundred twenty-three of this article whether the materials sought are in the possession, custody or control of the subpoenaed . . . business . . . within or without the state.” (Emphasis added.) Thus, he argues that all of the financial institutions (whether branches of foreign banks or subsidiaries thereof) must produce documents located anywhere in the world in response to the subpoenas duces tecum.
Plaintiffs reading of section 5224 (a-1) would negate the well-established separate entity rule. That rule provides that “each branch of a bank is a separate entity, in no way concerned with accounts maintained by depositors in other branches or at the home office.” (Cronan v Schilling, 100 NYS2d at 476; Parbulk II AS v Heritage Mar., SA, 35 Misc 3d 235, 238 [Sup Ct, NY County 2011]; Samsun Logix Corp. v Bank of China, 31 Misc 3d 1226[A], 2011 NY Slip Op 50861[U], *3 [Sup Ct, NY County 2011].)
Plaintiff bases his argument on the Court of Appeals’ allusion to the amendment in Koehler v Bank of Bermuda Ltd. (12 NY3d 533 [2009]). Because Koehler did not involve application of the separate entity rule, courts have rejected arguments that Koehler impliedly abrogated the separate entity rule in post-judgment enforcement proceedings. (Global Tech., Inc. v Royal Bank of Can., 34 Misc 3d 1209[A], 2012 NY Slip Op 50023[U] [Sup Ct, NY County 2012]; Samsun Logix Corp. v Bank of China, 31 Misc 3d 1226[A], 2011 NY Slip Op 50861[U] [2011]; Parbulk II AS v Heritage Mar., SA, 35 Misc 3d 235 [2011]; cf. Matter of International Legal Consulting Ltd. v Malabu Oil & Gas Ltd., 35 Misc 3d 1203[A], 2012 NY Slip Op 50546[U] [Sup Ct, NY County 2012].) “In light of the significant policy principles underlying the separate entity rule and its lengthy history in New York courts, . . . it is not unreasonable to expect that if the New York Court of Appeals had chosen to eliminate it, it would have said so.” (Shaheen Sports, Inc. v Asia Ins. Co., Ltd., 2012 WL 919664, *5, 2012 US Dist LEXIS 36720, *13-15 [SD NY 2012].) Indeed, the Appellate Division, First Judicial Department, has previously stated that any future exception to the separate entity rule would require “a pronouncement from the Court of Appeals or an act of the Legislature.” (Matter of National Union Fire Ins. Co. of Pittsburgh, Pa. v Advanced Empl. Concepts, 269 AD2d 101, 102 [2000].)
*925 As Judge Preska noted in Shaheen Sports, while Koehler focused on CPLR article 52 in its analysis, the separate entity rule was a court-made rule that did not involve any interpretation of CPLR article 52. And as she also noted, the public policy considerations underlying the separate entity rule continue to be reflected in the legislature’s version of the Uniform Commercial Code. “[T]hose policy considerations contemplate, among other issues, the ‘intolerable burden’ that would otherwise be placed on banking and commerce if mere service of a writ to a New York branch could subject foreign bank branches to competing claims.” (Shaheen Sports, Inc., 2012 WL 919664, *5, 2012 US Dist LEXIS 36720, *13-15.)
The importance of the separate entity rule is underlined by the existence of laws in the foreign jurisdictions in which the institutions are headquartered or in which other of their branches are located, laws providing for serious civil and criminal sanctions in the event of their breach (exhibits B-l through B-3 to Welcher affirmation for Banco Santander, S.A.; exhibit B to Welcher affirmation for Itau Unibanco, S.A. exhibit B). Thus, in the circumstances here, even assuming, arguendo, that the separate entity rule were no longer extant, it would be appropriate for the court to avail itself of its discretionary power under CPLR 5240 to deny plaintiffs motion.
Plaintiff is a citizen of a foreign state, resident in another foreign state, with a judgment obtained in Lebanon against a foreign citizen now residing in Brazil. While plaintiff seeks to invoke New York’s stature as “financial center of the world” which should “police the activities of these international banking institutions” (plaintiffs mem of law at 2), he fails to demonstrate that any such activities occurred in this state in this case. (Cf. Ehrlich-Bober & Co. v University of Houston, 49 NY2d 574, 581-582 [1980].)
As noted supra, plaintiffs counsel included in each information subpoena the certificate required by CPLR 5224 of his “reasonable belief’ that the party receiving the subpoena has “in its possession” information about the debtor that will assist the creditor in collecting the judgment. Tellingly, the subpoenas refer variously to subsidiaries other than those served with the subpoenas, to accounts maintained in other countries, and, in one instance, to a nonexistent entity (UBS, Inc.). Moreover, in three instances, they were served on New York branches or subsidiaries which are holding companies with no accounts (Credit Suisse [USA], Inc.) or which do not offer accounts to individuals *926 at all (Banco Santander, New York Branch; Credit Agricole Corporate and Investment Bank). Counsel’s rote repetition of the certification language, combined with, in some instances, the absence of any support therefor, or, in others, the scatter-shot nature of his requests, suggests that there may have been less than adequate “reasonable belief” to support issuance of the subpoenas in the first place. Rather, it suggests the validity of the argument of the financial institutions that, notwithstanding the absence of any connection of the parties, the underlying controversy, or any res in New York, plaintiff is attempting to use the New York courts as a springboard for a massive, multijurisdictional, international exercise in supplementary proceedings, instead of simply complying with the laws of the countries in which the judgment debtor’s assets are actually located.
Plaintiff attempts to evade the ambit of the separate entity rule, arguing that the separate entity rule applies only to attachment or turnover, and that at the present time he merely seeks information about the existence of any assets, not their attachment or turnover. (See Eitzen Bulk A/S v Bank of India, 827 F Supp 2d 234, 239 [SD NY 2011].) While plaintiff is correct that the separate entity rule has been applied by New York courts in denying applications for an order directing affirmative action as to the sought-after assets, his information subpoenas, however, are but a first step in the proceeding, with the ultimate goal of subsequent attachment and turnover. For the court to start down this path, knowing that the ultimate goal is unavailable in this jurisdiction, would be an unproductive waste of judicial resources.
As a result, a nearly mandatory rule of comity has developed where, as here, a plaintiff seeks information from a nonparty located in a foreign country. Principles of comity require that plaintiff seek that information through that country’s discovery processes or through the Hague Convention. (See Matter of Agusta, 171 AD2d 595, 595-596 [1991], citing Orlich v Helm Bros., 160 AD2d 135, 144 [1990] [since fact-finding is a judicially controlled process in civil law nations, non-judicial taking of evidence located in their territory is an affront to their sovereignty, particularly offensive where the entity being subjected to court-ordered fact gathering is not even a party to the litigation]; see also Intercontinental Credit Corp. Div. of Pan Am. Trade Dev. Corp. v Roth, 154 Misc 2d 639, 641 [1991].)
In deciding Orlich, the First Department expressly relied on the guidance issued by the United States Supreme Court in So *927 ciété Nationale Industrielle Aérospatiale v United States Dist. Court for Southern Dist. of Iowa (482 US 522, 544 [1987]). The Supreme Court established a set of criteria that courts must apply to determine whether the Hague Convention is an exclusive pathway to collection of information from international sources: review of the particular facts of the case, sovereign interests at play, and likelihood that resort to those procedures will prove effective. (Id.) The degree of intrusiveness involved in the sought discovery must also be carefully weighed. (Id. at 546.)
Here plaintiffs demands implicate the laws of various foreign jurisdictions, including, but not limited to, France, Switzerland, Monaco, Spain, and Brazil. For example, Banco Santander, S.A. has branches in 40 countries; Credit Suisse operates in 54 countries; Itau Unibanco, S.A. operates in 19 countries; and UBS AG and its branches, subsidiaries and affiliates are present in more than 50 countries.
Under principles of international comity, a New York court should not encroach upon another nation’s sovereignty by requiring citizens to take actions within their home country that would contravene their home country’s laws. (Ings v Ferguson, 282 F2d 149, 152 [2d Cir I960].) The nonparty banks have shown that were this court to require that they comply with plaintiffs demands, they, their officers and/or employees could be subject to civil or criminal penalties merely for such compliance. Such intrusion into legal frameworks of foreign countries is unjustified by the record sub judice. (See Laker Airways Ltd. v Pan Am. World Airways, 607 F Supp 324, 327 [SD NY 1985].) It would be unjust and inappropriate in the circumstances here to interpret New York’s procedure as permitting such a result, especially considering that neither the State of New York nor the United States has any discernable connection to the Lebanese judgment and the underlying litigants. The mere fact that nonparty banks conduct general business in the United States is insufficient to negate comity considerations. (See Tiffany [NJ] LLC v Qi Andrew, 276 FRD 143, 159 [SD NY 2011].) Therefore, plaintiffs sole mechanisms to obtain the information and the attendant relief it seeks are the Hague Convention and proceedings in appropriate jurisdictions.
In accordance with the foregoing, it is hereby ordered that plaintiff s motion to compel compliance with the postjudgment subpoenas duces tecum and informational subpoenas is denied in its entirety.

. The judgment was first domesticated as a money judgment in the State of Maryland on February 13, 2012 and then entered with the New York County Clerk pursuant to CPLR 5402 as if the foreign country judgment had been issued originally in that sister state. Plaintiff never brought either a motion for summary judgment in lieu of complaint or a plenary action to properly domesticate the foreign country judgment pursuant to CPLR 5301 et seq. No *918 mode of service of this proceeding, including by substituted means under CPLR 308 (5), was attempted on defendant. Because none of the nonparties challenging the subpoenas raised the issues of (1) the propriety of plaintiffs domestication of the Lebanese judgment in New York or (2) whether the foreign country penal judgment is amenable to domestication in New York, the court does not address the issue of whether plaintiff has an enforceable judgment in the State of New York. That determination will have to await the appropriate time.

. Banco Bradesco responded to the subpoena by letter but did not respond to the motion. Plaintiff stipulated to adjourn this motion as to Bank of Nova Scotia, ING U.S., and Royal Bank of Canada. The motion was withdrawn as against Safra National Bank of New York.

. Attachment B to the information subpoena questions listed, in footnote 9 to question 1, an account associated with the Geneva, Switzerland branch of Credit Agricole, S.A.

. Attachment B to the information subpoena questions listed, in footnote 9 to question 1, accounts at HSBC Bank USA, N.A., HSBC Bank (Panama), S.A. and HSBC Lebanon, and accounts located in Switzerland, Panama and Egypt.

. Attachment B to the information subpoena questions listed, in footnote 9 to question 1, an account at Banco Itau, S.A. in Sao Paulo.

. UBS AG alleges that there is no such legal entity as UBS, Inc. Plaintiff offers no proof to the contrary.

. Attachment B to the information subpoena questions Usted, in footnote 9 to question 1, accounts at UBS AG in Zurich, Switzerland.

. Banco Santander notes that Spain (where it is headquartered) has laws requiring banks to protect the personal data and banking information— including identities, addresses and all account-related information — of their customers, under the threat of both civil and criminal liability (exhibits B-l, B-2 to Welcher affirmation). Brazil, where Itau Unibanco is headquartered, has similar laws (exhibit B to Welcher affirmation). The laws of Switzerland, where UBS AG is based, are well-known for their zealous protection of the *923 privacy of clients of financial institutions. In addition, they impose criminal penalties on any person who should disclose account holder information (mem of law of UBS AG at 8-10).