*Peterson v. Islamic Republic of Iran*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2015

(Originally Argued:  June 8, 2016        Originally Decided: November 20, 2017)

(Argued upon remand from the Supreme Court:  May 27, 2020

Decided upon remand from the Supreme Court:  June 22, 2020)

Docket No. 15-0690

———————————————

Deborah D. Peterson, *et al.*,
Plaintiffs-Appellants,

v.

Islamic Republic of Iran, Bank Markazi, AKA Central Bank of Iran, Banca UBAE
SpA, Clearstream Banking, S.A., JPMorgan Chase Bank, N.A.,
Defendants-Appellees.

———————————————

Before:        POOLER, SACK, and LOHIER, *Circuit Judges*.

AFFIRMED in part, VACATED in part, and REMANDED

> JAMES P. BONNER, Fleischman Bonner &
> Rocco LLP, White Plains, New York
> (Patrick L. Rocco, Susan M. Davies,
> Fleischman Bonner & Rocco LLP, White
> Plains, New York, Liviu Vogel, Salon
> Marrow Dyckman, Newman & Broudy
> LLC, New York, New York, *on the brief*), *for
> Plaintiffs-Appellants*;
>
> ROBERT K. KRY, MoloLamken LLP,
> Washington, D.C. (Jeffrey A. Lamken,
> Lauren M. Weinstein, MoloLamken LLP,

Washington, D.C., Donald F. Luke, Jaffe & Asher LLP, New York, New York, *on the brief*), *for Defendant-Appellee Bank Markazi, AKA Central Bank of Iran*;

UGO COLELLA (John J. Zefutie, Jr., *on the brief*), Colella Zefutie LLC, Washington, D.C., *for Defendant-Appellee* Banca UBAE S.p.A.;

BENJAMIN S. KAMINETZKY (Gerard X. McCarthy, *on the brief*), Davis Polk & Wardwell LLP, New York, New York, *for Defendant-Appellee* Clearstream Banking S.A.

*PER CURIAM*:

## PROCEDURAL HISTORY

We first addressed this matter in *Peterson v. Islamic Republic of Iran (Peterson II)*, 876 F.3d 63 (2d Cir. 2017), on appeal from a judgment of the United States District Court for the Southern District of New York, *Peterson v. Islamic Republic of Iran*, Case No. 13-cv-9195, 2015 WL 731221, (KBF) (S.D.N.Y. Feb. 20, 2015). We affirmed in part, vacated in part, and remanded. We summarized our conclusions thus:

1. Plain error as to the application of the [defendant] Clearstream settlement agreement to those plaintiffs who were not parties to [a previous related judgment of the United States District Court for the Southern District of New York, *Peterson v. Islamic Republic of Iran* (*Peterson I*), Case No. 10 Civ. 4518 (KBF), 2013 WL 1155576 (S.D.N.Y. Mar. 13, 2013)] requires vacatur of the judgment of dismissal and remand with respect to those plaintiffs' non-turnover claims brought against Clearstream.

2. Excepting those plaintiffs who were not parties to *Peterson I*, the Clearstream settlement agreement released the plaintiffs' non-turnover claims brought against Clearstream. The district court therefore properly dismissed those claims.

2

3. Whether the UBAE settlement agreement [in *Peterson I*] is applicable to the plaintiffs' non-turnover claims brought against UBAE is, under the language of the agreement, unclear. Those claims were, therefore, dismissed by the district court in error. Accordingly, we vacate and remand that part of the district court's judgment of dismissal.

4. The UBAE settlement agreement did not release the plaintiffs' non-turnover claims brought against Markazi. Accordingly, we vacate and remand that part of the district court's judgment of dismissal.

5. The district court correctly determined that the asset at issue is a right to payment held by Clearstream in Luxembourg. It also, therefore, properly dismissed JPMorgan from this action.

6. The district court prematurely dismissed the amended complaint for lack of subject-matter jurisdiction. *Cf. Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250 (2014); *Koehler v. Bank of Berm. Ltd.*, 12 N.Y.3d 533, 911 N.E.2d 825, 883 N.Y.S.2d 763 (2009). On remand the district court should consider whether it has personal jurisdiction over Clearstream. If the court answers that question in the affirmative, then it should determine whether any provision of state or federal law prevents the court from recalling, or the plaintiffs from receiving, the asset.

*Peterson II*, 876 F.3d at 96.

The defendants filed petitions for rehearing. We denied them, and in doing so instructed the district court to consider UBAE's personal jurisdiction defense on remand. *See* Order Den. Reh'g, ECF No. 339.

On May 7, 2018, Defendant Bank Markazi filed a petition for certiorari in the Supreme Court of the United States.[*] On October 1, 2018, the Court sought

---

[*] Defendant Clearstream filed a petition for certiorari on the following day, May 8, 2018.

the views of the Solicitor General of the United States. *See Bank Markazi v. Peterson*, 139 S. Ct. 306 (2018) (Mem.).

The Solicitor General responded more than a year later, on December 9, 2019, and recommended that the petitions for writs of certiorari be denied because, *inter alia*, "both Houses of Congress ha[d] passed separate bills that, if either bec[a]me[] law, could substantially affect the proper disposition of this case." Br. of United States at 10.

Eleven days later, on December 20, 2019, Congress enacted and the President signed into law the National Defense Authorization Act for Fiscal Year 2020 ('NDAA"), Pub. L. No. 116-92, 133 Stat. 1198, a statute specifically directed, at least in part, to this matter. Amending 22 U.S.C. § 8772, it bluntly provides, *inter alia*, that "notwithstanding any other provision of law, including any provision of law relating to sovereign immunity, and preempting any inconsistent provision of State law," financial assets that satisfied certain conditions, including those assets "identified in and the subject of proceedings in the United States District Court for the Southern District [in *Peterson II*]," "shall be subject to execution or attachment in aid of execution, or to an order directing that the asset be brought to the State in which the court is located and subsequently to execution or attachment in aid of execution, . . . without regard to concerns relating to international comity" "in order to satisfy any" terrorism-related judgment for "compensatory damages awarded against Iran." *Id.* § 8772(a)(1), (b)(2). (as amended).

On the same day, the Solicitor General filed a supplemental brief with the Supreme Court arguing that "[i]t now would be appropriate" for the Court "to grant the certiorari petitions, vacate the judgment below, and remand to the court of appeals for further consideration in light of the NDAA." Supp. Br. of United States at 4–5.

On January 13, 2020, the Supreme Court did as the Solicitor General recommended, granting the pending petitions for certiorari, vacating our decision in *Peterson II*, and remanding the matter to this Court. (The procedure is commonly referred to as a "GVR." *See* Aaron-Andrew P. Bruhl, The Supreme Court's Controversial GVRs — And an Alternative, 107 Mich. L. Rev 711 (2009)). In doing so, the Court specifically referred to the NDAA. Its opinion reads in its entirety: "The petitions for writs of certiorari are granted. The judgment is

4

vacated, and the cases are remanded to the United States Court of Appeals for the Second Circuit for further consideration in light of the National Defense Authorization Act for Fiscal Year 2020, Pub. L. No. 116-___ (S. 1790)." *Bank Markazi v. Peterson*, 140 S. Ct. 813 (2020) (Mem.).

Upon return of the matter to us, we ordered further briefing from the parties. On May 27, 2020, we heard argument as to what action this Court should take in the wake of the vacatur by and remand from the Supreme Court.

**DISCUSSION**

In Part B of the "Discussion" section of *Peterson II*, 876 F.3d at 77–84, we addressed the non-turnover claims at issue in this appeal. As summarized in our conclusion in *Peterson II*, *id.* at 96, quoted above, we affirmed in part and vacated and remanded in part. That portion of our opinion is not challenged by any party to these proceedings at this juncture nor have we reason to doubt its propriety. We therefore readopt that portion of our now vacated decision in *Peterson II* as the decision of this Court.

Part C of the "Discussion" section of *Peterson II* addressed the turnover claim at issue in this appeal:

In subpart 1 of Part C, *id.* at 84–87, we discussed the "Nature and Location of the Assets" that the plaintiffs seek to have the courts require be turned over to them. That portion of the opinion is summarized in Part 5 of our conclusion in *Peterson II*, *id.* at 96, quoted above. We concluded that

> the assets at issue are . . . represented by a right to payment in the possession of Clearstream located in Luxembourg. Accordingly, the district court properly granted JPMorgan's motion for partial summary judgment because JPMorgan is not in possession of any assets subject to turnover. Similarly, neither Markazi nor UBAE possesses any assets subject to turnover here because the asset at issue is in fact held by Clearstream and represented as a positive account balance in a 'sundry blocked account' to which neither Markazi nor UBAE has access.

*Id.* at 87.  That conclusion is similarly uncontested by the parties and we see no reason to question it now.  We therefore readopt that portion of the now vacated *Peterson II* as the opinion of this Court.

In subpart C.2 of the "Discussion" section of *Peterson II*, *id.* at 87–95, we considered the "Jurisdiction for Execution" with respect to the turnover assets. That portion of the opinion is summarized in Part 6 of our conclusion in *Peterson II*, *id.* at 96, quoted above.  We now reinstate only our judgment that the district court prematurely dismissed the amended complaint for lack of subject-matter jurisdiction and remand for the district court to reconsider that question. We do not, at this time, reinstate our analysis as to whether the common law and *Koehler* provide the district court with jurisdiction over the extraterritorial asset.  Based on the enactment of the NDAA, and the language employed by the Supreme Court in vacating and remanding this matter to this Court, however, we respectfully direct the district court, on remand, to address the issues before it pertaining to the NDAA, personal jurisdiction, and, consistent with this opinion, any other matters necessary to the resolution of the case.

Finally, if this matter or any part thereof returns to this Court, in light of the history of this litigation, the vacatur and remand of this Court's judgment by the Supreme Court, and this panel's long-standing familiarity with the matter and the very complex issues to which it gives rise, we respectfully direct the Clerk of this Court to return the matter to this panel for further review and adjudication.  *Cf.  United States v. Jacobson*, 15 F.3d 19 (2d Cir 1994); *id.* at 22 (citing, *inter alia*, *Gulliver v. Dalsheim*, 739 F.2d 104, 106 (2d Cir.1984), in which "the panel retained jurisdiction in a habeas case while remanding to allow the district court to apply intervening decisions of this court"); *see also Gulliver v. Dalsheim*, 687 F.2d 655, 659 (2d Cir. 1982) (remanding while retaining jurisdiction).  From whatever decision the district court makes on remand on any of the issues being remanded for further consideration in this case, the jurisdiction of this Court to consider a subsequent appeal may be invoked by any party by notification to the Clerk of Court within ten days of the district court's decision, *see Jacobson*, 15 F.3d at 21–22, in which event the renewed appeal will be assigned to this panel.

The judgment of the district court is thus affirmed in part, and vacated and remanded in part.