07-2076-cv
Motorola Credit Corp. v. Uzan

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2008

(Argued: February 9, 2009                    Decided: March 31, 2009)

Docket No. 07-2076-cv

MOTOROLA CREDIT CORPORATION and
        NOKIA CORPORATION,

        *Plaintiffs-Appellees*,

        -v.-

KEMAL UZAN, CEM CENGIZ UZAN, MURAT
        HAKAN UZAN, MELAHAT UZAN,
        AYSEGUL AKAY, and ANTONIO LUNA
        BETANCOURT,

        *Defendants-Appellants*.[*]

Before: CABRANES, WESLEY, *Circuit Judges*, and KORMAN, *District Judge*.[**]

Appeal from a final order of the United States District Court for the Southern District of New

York (Jed S. Rakoff, *Judge*), denying a motion for post-judgment relief under Rule 60(b) of the Federal

Rules of Civil Procedure. We hold that Rule 60(b) provides for equitable relief and that defendants-

appellees did not proceed with "clean hands." Accordingly, they are not entitled to relief under Rule

60(b).

Affirmed.

---

[*] The Clerk of Court is instructed to amend the official caption in this case to conform to the listing of parties above.

[**] The Honorable Edward R. Korman, of the United States District Court for the Eastern District of New York, sitting by designation.

HOWARD H. STAHL (Stephen K. Davidson and Bruce C. Bishop, *on the brief*), Steptoe & Johnson LLP, Washington, D.C., *for Plaintiff-Appellee Motorola Credit Corp.*

Jason Brown, Ropes & Gray LLP, New York, NY, and David D. Howe, Holland & Knight LLP, New York, NY, *for Plaintiff-Appellee Nokia Corp.*

MAY ORENSTEIN, Brown Rudnick LLP, New York, NY (David Molton, Brown Rudnick LLP, New York, NY and R. Stan Mortenson, Baker Botts LLP, Washington, DC, *on the brief*) *for Defendants-Appellants.*

JOSÉ A. CABRANES, *Circuit Judge*:

The principal question in this appeal is whether a judgment for damages must be amended pursuant to Rule 60(b) of the Federal Rules of Civil Procedure where plaintiffs have partially recovered from other sources and have agreed to use this partial recovery as a "set-off" against the judgment. For the reasons stated below, we hold that the relief available under Rule 60(b) is both discretionary and equitable, and that the District Court did not abuse its discretion in denying defendants' motion for post-judgment relief.

## BACKGROUND

Defendants-appellants—members of the Uzan family of Turkey and a close associate, Antonio Luna Betancourt (collectively, the "Uzans" or "defendants")—are the former, controlling shareholders of Telsim Tekelomunikayson Mobil Hizmetleri A.S. ("Telsim"), a now-defunct Turkish telecommunications company. The Uzans are well known to the courts of our Circuit, as there are already ten published decisions in this Circuit chronicling the background of this case and "the extraordinary nature of the Uzans' wrongful behavior." *Motorola Credit Corp. v. Uzan*, 509 F.3d 74, 88 (2d Cir. 2007) ("*Uzan X*"); *see also id.* at 77-80 (summarizing the history of this litigation); *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 42-44 (2d Cir. 2004) ("*Uzan VII*") (explaining the underlying fraud

2

perpetrated by the Uzans).[1]  Briefly, in July 2003 the United States District Court for the Southern

District of New York (Jed S. Rakoff, *Judge*) found that the Uzans defrauded plaintiffs Motorola Credit

Corporation ("Motorola") and Nokia Corporation ("Nokia") out of more than $ 2 billion.  *See Uzan*

*VII*, 388 F.3d at 42.  The District Court awarded compensatory damages in excess of $2 billion and an

equal sum in punitive damages, *see Uzan III*, 274 F. Supp. 2d at 580-81, but later reduced the award of

punitive damages to $1 billion, *see Uzan IX*, 413 F. Supp. 2d at 353, following a remand by a panel of

this Court, *see Uzan VII*, 388 F.3d at 65.

The instant appeal concerns the denial by the District Court, in an unpublished order entered

April 11, 2007, of the Uzans' motion for post-judgment relief pursuant to Rule 60(b) of the Federal

Rules of Civil Procedure.[2]  *See Motorola Credit Corp. v. Uzan*, No. 02 Civ. 0666, 2007 U.S. Dist. LEXIS

27377 (S.D.N.Y. Apr. 11, 2007).  The Uzans sought three forms of relief from the District Court: (1) a

reduction in the judgment for compensatory damages awarded to Motorola and Nokia, equal to the

sums plaintiffs have recovered in settlement agreements with the Turkish Savings Deposit Insurance

---

[1] The other published decisions in this matter—listed in chronological order—are reported at *Motorola Credit Corp. v. Uzan*, 202 F. Supp. 2d 239 (S.D.N.Y. 2002) ("*Uzan I*") (preliminary injunction), *aff'd in part, remanded in part*, 322 F.3d 130 (2d Cir. 2003); *Motorola Credit Corp. v. Uzan*, 322 F.3d 130 (2d Cir. 2003) ("*Uzan II*"); *Motorola Credit Corp. v. Uzan*, 274 F. Supp. 2d 481 (S.D.N.Y. 2003) ("*Uzan III*"), *aff'd in part, vacated in part*, 388 F.3d 39 (2d Cir. 2004); *Motorola Credit Corp. v. Uzan*, 275 F. Supp. 2d 519 (S.D.N.Y. 2003) ("*Uzan IV*"); *Motorola Credit Corp. v. Uzan*, 282 F. Supp. 2d 133 (S.D.N.Y. 2003) ("*Uzan V*"); *Motorola Credit Corp. v. Uzan*, 288 F. Supp. 2d 558 (S.D.N.Y. 2003) ("*Uzan VI*"); *Nokia Corp. v. Uzan*, 425 F.3d 1005 (2d Cir. 2005) ("*Uzan VIII*"); *Motorola Credit Corp. v. Uzan*, 413 F. Supp. 2d 346 (S.D.N.Y. 2006) ("*Uzan IX*"), *aff'd*, 509 F.3d 74 (2d Cir. 2007).

[2] Rule 60(b) of the Federal Rules of Civil Procedure states:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

    (1) mistake, inadvertence, surprise, or excusable neglect;
    (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
    (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
    (4) the judgment is void;
    (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
    (6) any other reason that justifies relief.

Fund ("SDIF"), which seized control of Telsim in 2004; (2) a discharge of the compensatory damages awarded to Motorola because Motorola has assigned its contract claims against Telsim to Bayindirbank, a bank controlled by the Republic of Turkey; and (3) an end to a permanent injunction, imposed pursuant to the District Court's July 31, 2003 Opinion and Order, *see Uzan III*, 274 F. Supp. 2d at 581-82. On appeal, the Uzans argue that the District Court erred in denying all three forms of relief.

## DISCUSSION

Rule 60(b) provides "a mechanism for extraordinary judicial relief [available] only if the moving party demonstrates exceptional circumstances," *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (internal quotation marks omitted), and relief under the rule is discretionary, *see* Fed. R. Civ. P. 60(b)(5) ("On motion and just terms, the court *may* relieve a party or its legal representative from a final judgment, order, or proceeding, for the following reasons: . . . (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." (emphasis added)). We therefore review the denial of a Rule 60(b) motion for abuse of discretion. *See, e.g.*, *Ruotolo*, 514 F.3d at 191; *cf. Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) ("A district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." (citations and internal quotation marks omitted)).

## A.    Reduction of Judgment for Compensatory Damages

As the District Court found, Motorola and Nokia have settled certain contractual claims with Telsim, acting through SDIF, and each plaintiff has received cash payments from Telsim that, together, exceed $1.2 billion. Plaintiffs have "set off" these amounts against their judgments, "resulting in a *pro tanto* reduction in the amounts owed by the Individual Defendants," who still owe "hundreds of millions" in damages. *Motorola Credit Corp.*, 2007 U.S. Dist. LEXIS 27377, at *2. The Uzans argue that "[a] district court *must* reduce a judgment under . . . Rule 60(b)(5) . . . if the plaintiff's injury has been

4

fully or partially satisfied by another judgment or settlement." Appellant's Br. at 25 (emphasis added). They further posit that plaintiffs' set-off is unreliable because there is a risk that plaintiffs will apply their settlement compensation to the punitive, instead of compensatory, portions of the judgment entered against the Uzans.

The discretionary relief available under Rule 60(b) is equitable. *See* Fed. R. Civ. P. 60(b)(5) (stating that a "court may relieve a party or its legal representative from a final judgment . . . [where, *inter alia*,] applying it prospectively is no longer *equitable*" (emphasis added)); 12 James Wm. Moore *et al.*, *Moore's Federal Practice* § 60.22[5] (3d ed. 2008) ("The relief provided by Rule 60(b) is equitable in nature and, in exercising its discretion under Rule 60(b), a court may always consider whether the moving party has acted equitably.") (collecting cases); 11 Charles Allen Wright *et al.*, Federal Practice and Procedure § 2857, at 255 (2d ed. 1995) ("Equitable principles may be taken into account by a court in the exercise of its discretion under Rule 60(b)."). The record before us—and the record described in the ten published decisions predating this opinion, of which we take judicial notice, *see, e.g.*, *New York v. Operation Rescue Nat'l*, 273 F.3d 184, 198 (2d Cir. 2001) (taking judicial notice of factual findings in a related contempt proceeding)—demonstrate that the Uzans have not acted equitably because they have not pursued their defense with "clean hands," *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 814 (1945) (stating that "he who comes into equity must come with clean hands" (internal quotation marks omitted)). *See generally Shondel v. McDermott*, 775 F.2d 859, 867-68 (7th Cir. 1985) (Posner, *J.*) (noting that the concept of "clean hands" originated in "the moralistic, rule-less, natural-law character of the equity jurisprudence created by the Lord Chancellors of England when the office was filled by clerics," and observing that "[t]oday, 'unclean hands' really just means that in equity as in law the plaintiff's fault, like the defendant's, may be relevant to the question of what if any remedy

5

the plaintiff is entitled to").[3]

Relying on their vast personal wealth, the Uzans have time and again deployed their lawyers to raise legal roadblocks to the enforcement of the judgment against them. They have persistently endeavored to evade the lawful jurisdiction of the District Court and undermine its careful and determined work. *See, e.g.*, *Motorola Credit Corp.*, 2007 U.S. Dist. LEXIS 27377, at *11 ("[T]he Individual Defendants' willful failure to comply with this Court's order that they provide post-judgment discovery makes the arrest orders still applicable."); *Uzan IX*, 413 F. Supp. 2d at 350 ("[T]he individual defendants, despite repeated discovery orders, have refused to produce evidence of their financial situation—evidence largely or exclusively in their control."); *Uzan III*, 274 F. Supp. 2d at 491 ("The defendants contemptuously refused to obey the Court's orders, in one case even breaking their sworn promise not to further eviscerate the collateral. The defendants also repeatedly reneged on promises to provide discovery . . . and instructed their counsel not to reveal to this Court or the Court of Appeals secret steps they were taking in Turkey to obtain *ex parte* orders undercutting the prior orders of this Court."); *id.* at 494 ("Moreover, defendants have repeatedly resisted, and gone into contempt of, this Court's orders to transfer the collateral (or its functional equivalent) to the registry of this Court so that it could be used to satisfy any judgment. They have also declined the proffered alternative of posting a bond in lieu of the collateral, preferring to remain in contempt.").[4] As counsel confirmed at oral argument, the Uzans remain in contempt of court for failure to comply with the District Court's orders that they transfer stock holdings to the Court's registry, and they remain subject to arrest should they

---

[3] Although the District Court did not consider "clean hands" in its denial of relief, we "may affirm the judgment of the district court on any ground appearing in the record," *Shumway v. UPS*, 118 F.3d 60, 63 (2d Cir. 1997).

[4] The record on appeal contains additional evidence of the Uzans' ongoing disregard of the District Court's jurisdiction and orders. *See, e.g.*, J. A. 1127 (Letter of R. Stan Mortenson, counsel for Uzan defendants, dated July 1, 2005) (noting that counsel "ha[s] received no indication that the[ ] defendants would appear for videotape depositions"); J. A. 203 (Tr. of Proceedings, Mar. 12, 2002, at 24:23-25:2) (Statement of R. Stan Mortenson, counsel for Uzan defendants) ("Should this court ultimately enter judgment in this case, the defendants . . . intend to resist every way they can the foreign enforcement of those matters because they do not believe that this court [has] the kind of jurisdiction necessary to enter those judgments in an enforceable way.").

6

set foot in the United States. *See Motorola Credit Corp.*, 2007 U.S. Dist. LEXIS 27377, at *10-11.

Despite their flat-out refusal to comply with the District Court's lawful orders, the Uzans now have the chutzpah to seek post-judgment, equitable relief from complying with those orders.[5] However, their conduct before this Court, and especially before the District Court, weighs heavily against granting the relief they seek. As the Supreme Court stated long ago, the "clean hands" doctrine "is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Precision Instrument Mfg. Co.*, 324 U.S. at 814. We therefore conclude that the Uzans' utter disregard for the District Court's orders precludes the relief that they are seeking, and the District Court did not err in denying it.

Our decision today does not conflict with our Court's prior holding that a plaintiff may not, as a matter of law, recover twice for the same injuries, *see Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989) ("[W]hen a plaintiff receives a settlement from one defendant, a nonsettling defendant is entitled to a credit of the settlement amount against any judgment obtained by the plaintiff against the nonsettling defendant as long as both the settlement and judgment represent common damages."). In this case, the District Court assessed the risk of excessive recovery and determined that, in light of plaintiffs' assurances that they would not seek to recover from the Uzans the amount already recovered

---

[5] "Chutzpah" as a legal term of art is analytically similar to "unclean hands," though not necessarily coterminous with that concept as understood in the law of chancery. The "classic definition" of chutzpah has been described as "that quality enshrined in a man who, having killed his mother and father, throws himself on the mercy of the court because he is an orphan." Leo Rosten, *The Joys of Yiddish* 92 (1968); *see also Thaler v. Second New Haven Bank*, Civ. No. B-713, slip op. at 1 (D. Conn. Apr. 10, 1974) (Jon O. Newman, *J.*) ("When the apocryphal child murdered his parents and then sought mercy as an orphan, he set a standard for courtroom chutzpah that has not been rivaled until the filing of this lawsuit."); *Scher v. Nat'l Assoc. of Sec. Dealers,* 386 F. Supp. 2d 402, 404 (S.D.N.Y. 2005) (Michael B. Mukasey, *J.*) (quoting the unpublished opinion by then-District Judge Newman and explaining the extraordinary circumstances of the civil suit brought by Seymour Thaler, a convicted felon and former New York state senator). *Cf. Yates v. City of New York*, No. 04 Civ. 9928, 2006 U.S. Dist. LEXIS 54199, at *1 (S.D.N.Y. Aug. 4, 2006) (Sidney H. Stein, *J.*) (using this "vastly overused" but nonetheless "most appropriate" term to describe "an individual, [who] after being mauled by the 450-pound Siberian tiger he had been raising inside his fifth-floor apartment along with an alligator, sue[d] the city and the police who entered the apartment in an effort to rescue the animals for doing so without a search warrant").

through SDIF, a formal modification of the judgment was unnecessary. Although we adhere to our rule against double recoveries, we also note that we have never held that judgment-debtors are entitled to an amended judgment each time their judgment is "credited" or set-off by a settling co-defendant. Accordingly, though we affirm the District Court's decision on the ground that the Uzans lack "clean hands," we cannot say that the District Court's reasoning was legally erroneous or outside "the range of permissible decisions," *Sims*, 534 F.3d at 132.

In addition, today's decision does not conflict with our Court's previous observation that the "clean hands" doctrine might not apply where a Rule 60(b) motion is brought on the basis of a "fraud on the court." *See Martina Theatre Corp. v. Schine Chain Theatres, Inc.*, 278 F.2d 798, 801 (2d Cir. 1960) (Friendly, *J.*) (suggesting that "[a] defrauded district court would have been empowered to take action *sua sponte* to expunge the judgment, and we would suppose that anyone, whether his hands were clean or dirty, could suggest that it do so"). The application of any equitable doctrine will, quite naturally, depend on the circumstances presented, and we do not today hold that "clean hands" are the *sine qua non* of every Rule 60(b) motion.[6]

The Uzans also posit that Motorola has wrongfully attempted to use its share of the Telsim settlement to offset both compensatory and punitive damages even though Telsim was not liable for punitive damages. In the Uzan's view, any "set off" should only apply to the District Court's award of compensatory damages, because those damages are shared by both the Uzans and Telsim. Motorola does not dispute that punitive damages were awarded against the Uzans and not against Telsim. *See Uzan IX*, 413 F. Supp. 2d at 353 (awarding Motorola "$ 1 billion in punitive damages from the *individual defendants*, jointly and severally" (emphasis added)). Nonetheless, Motorola argues that it may apply its

---

[6] We also recognize that other courts have concluded that it would be a *per se* abuse of discretion to deny relief under Rule 60(b) under different circumstances. *See, e.g., Blaney v. West*, 209 F.3d 1027, 1031 (7th Cir. 2000) ("It is a *per se* abuse of discretion to deny a Rule 60(b)(4) motion when the trial court has no jurisdiction over the action.") However, we are not confronted here with any circumstances—jurisdictional or otherwise—suggesting a need to modify the judgment.

share of the settlement to the *total* amount of damages owed by the Uzans—approximately $3.1 billion—because the Uzans "hope to reduce [Motorola's] ability to recover abroad by reducing the amount of the compensatory award, and then placing their assets in jurisdictions where the enforcement of punitive damages is prohibited." Appellees' Br. 47.

The District Court did not address the allocation of the settlement proceeds between compensatory and punitive damages, and it is unnecessary for us to do so in order to resolve this appeal. Nothing in the record indicates that the Uzans are even remotely close to full payment of compensatory damages. To the contrary, there is every indication that the Uzans have no interest in voluntarily paying any part of the judgment against them. The question of applying a "set off" to compensatory damages or punitive damages is therefore unripe for adjudication. We note, however, that should the Uzans attempt to use their settlement credit to frustrate the enforcement of punitive damages overseas, the District Court is well-equipped to order appropriate relief to protect its lawful judgment and jurisdiction. *See Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 113 (2d Cir. 2007) (concluding that district courts "maintain[ ] jurisdiction to protect . . . federal judgments even after the money judgment . . . was satisfied").[7]

## B.  Motorola's Assignment of Claims

The Uzans also argue that the judgment against them should be modified to discharge the award of compensatory damages to Motorola—approximately $2.1 billion—pursuant to the "doctrine of election of remedies" because Motorola assigned certain contractual claims to Bayindirbank as part

---

[7] At oral argument, we raised *nostra sponte* the possibility that the so-called "fugitive disentitlement doctrine" might provide an independent basis for resolving this appeal. *See generally SEC v. Berger*, 322 F.3d 187, 191 (2d Cir. 2003) ("[F]ederal courts 'have authority to dismiss an appeal . . . if the party seeking relief is a fugitive while the matter is pending.'" (quoting *Degen v. United States*, 517 U.S. 820, 824 (1996))). Several years ago, we declined plaintiffs' request to apply the "fugitive disentitlement doctrine" in an unpublished summary order, principally on the ground that, until that time, "[the Uzan's] actions ha[d] not been sufficiently disruptive of the appellate process that dismissal would be a reasonable response." *Motorola Credit Corp. v. Uzan*, 115 Fed. Appx. 473, 475 (2d Cir. 2004) (internal quotation marks omitted). We note that the circumstances that counseled restraint in 2004 may no longer exist now or in the future. Therefore, in deciding future challenges by the Uzans to the enforcement of the judgments against them, we do not preclude the District Court from considering, in its informed discretion, whether the "fugitive distentitlement doctrine" may provide an appropriate basis for disposing of future motions and petitions by the Uzans.

of the Telsim settlement agreement, thereby forfeiting its ability to collect on a fraud judgment that satisfies the same injury. The District Court rejected this argument for several reasons, principally because the doctrine of election of remedies only applies "where the second remedy is clearly inconsistent with the first." *Motorola Credit Corp.*, 2007 U.S. Dist. LEXIS 27377, at \*6 (quoting *Equitable Trust Co. v. Connecticut Brass & Mfg. Corp.*, 10 F.2d 913, 916 (2d Cir. 1926)). The District Court concluded that there was nothing inconsistent about relinquishing certain claims in return for a partial recovery while reserving the right to recover the balance from defendants. The Court also noted that, as a matter of common sense, a double recovery is impossible because Telsim operates as a shell corporation and has no assets. We fully agree with the District Court's determinations.

**C.     Permanent Injunction**

Finally, the Uzans argue that the District Court erred in not vacating the July 31, 2003 permanent injunction requiring them to disgorge their shares in Telsim to the District Court's registry. *See Uzan III*, 274 F. Supp. 2d at 581-82. According to the Uzans, the injunction is moot because (1) plaintiffs have relinquished their rights to Telsim shares as part of the Telsim settlement and (2) plaintiffs no longer have control over their Telsim shares. The District Court declined to grant relief because the Uzans had not shown good faith in complying with the injunction, and also declined to vacate the arrest orders against the Uzans because of their "willful failure to comply with this Court's order that they provide post-judgment discovery." *Motorola Credit Corp.*, 2007 U.S. Dist. LEXIS 27377, at \*10-11; *see also Uzan III*, 274 F. Supp. 2d at 582 ("The Court . . . orders that unless and until defendants purge their contempts, the individual defendants, if found within the jurisdiction of the United States, will be immediately arrested and held in confinement until such time as they comply with the directives of the Court's January 6 and May 9 Orders . . . ."). For the reasons explained above, we agree.

\*   \*   \*

A final word is in order: the record of these proceedings reveals a prolonged, determined effort by the Uzans to avoid compliance with the decrees and judgments of the District Court.  In other circumstances—where smaller sums are involved, and recalcitrant defendants/judgment debtors are not in a position to retain skilled counsel endlessly to devise legal strategies for non-compliance with judicial orders—it is probable that this litigation would have been over long ago.  We take this occasion to again compliment the able District Judge, whose conduct of these complex proceedings over many years has been characterized by admirable care, diligence, and tenacity.  We also serve notice on the Uzans and their counsel that the patience of the courts is not without limits.  In the absence of a showing of good faith efforts to comply with the orders and judgments of the District Court, further legal maneuvers designed to frustrate the orderly management of post-judgment proceedings will properly raise the question of whether the imposition of sanctions on counsel as well as defendants are appropriate or necessary to vindicate the interests of justice.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the April 11, 2007 order of the District Court.  Pursuant to Rule 39(a) of the Federal Rules of Appellate Procedure, the costs of this appeal will be taxed against the Uzans.

11