13-1519-cv, 13-2535-cv(L), 13-2639-cv(con)

*Tire Eng'g & Distrib, L.L.C., et al. v. Bank of China Ltd., Motorola Credit Corp. v. Standard Chartered Bank*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2013

(Argued: October 11, 2013     Decided: January 14, 2014)
Docket Nos. 13-1519-cv, 13-2535-cv(L), 13-2639-cv(con)

———————————————

TIRE ENGINEERING AND DISTRIBUTION L.L.C., JORDAN FISHMAN, BEARCAT TIRE
A.R.L.,

*Plaintiffs-Appellants*,

BCATCO A.R.L.,

*Plaintiff*,

v.

BANK OF CHINA LIMITED,

*Defendant-Appellee.*

———————————————

MOTOROLA CREDIT CORPORATION,

*Plaintiff-Counter-Defendant-
Appellant-Cross Appellee*,

NOKIA CORPORATION,

*Plaintiff-Counter-Defendant*,

MOTOROLA, INC., KROLL ASSOCIATES INC., CHRISTOPHER B. GALVIN, KEITH J. BANE, WALTER KEATING, ED HUGHES, ERNST KRAMER,

*Counter Defendants,*

v.

STANDARD CHARTERED BANK,

*Appellee-Cross Appellant,*

MURAT HAKAN UZAN, CEM CENGIZ UZAN,

*Defendants-Counter-Claimants,*

KEMAL UZAN, LIBANANCO HOLDINGS CO. LIMITED, MELAHAT UZAN, AYSEGUL AKAY, ANTONIO LUNA BETANCOURT, UNIKOM ILETISM HIZMETLERI PAZARLAMA A.S., STANDART PAZARLAMA A.S., STANDART TELEKOMUNIKAYSON BILGISAYAR HIZMETLERI A.S.,

*Defendants.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

Before:

CALABRESI, CHIN, and DRONEY, *Circuit Judges*.

Appeals heard in tandem from orders of the United States District Court for the Southern District of New York (Carter, *J.*, and Rakoff, *J.*) holding that the "separate entity rule" precludes a court from ordering a garnishee bank

operating branches in New York to turn over or restrain assets of judgment debtors held in foreign branches of the bank.

DECISION RESERVED AND QUESTIONS CERTIFIED.

———————————————

WILLIAM EDGAR COPLEY, III (Stephen Adam Weisbrod, *on the brief*), Weisbrod Matteis & Copley PLLC, Washington, D.C., and Stephen Zoltan Starr, Starr & Starr, PLLC, New York, New York, *for Tire Engineering and Distribution, L.L.C., Bcatco A.R.L., Jordan Fishman*, and *Bearcat Tire A.R.L.*

PAMELA CHEPIGA (Andrew Rhys Davies, Molly Spieczny, *on the brief*), Allen & Overy LLP, New York, New York, *for Bank of China Limited*.

HOWARD H. STAHL (George R. Calhoun, *on the brief*), Fried, Frank, Harris, Shriver & Jacobson LLP, Washington D.C., *for Motorola Credit Corporation*, and *Nokia Corporation*.

BRUCE EDWARD CLARK (Patrick B. Berarducci, Sharon L. Nelles, Bradley P. Smith, *on the brief*), Sullivan & Cromwell LLP, New York, New York, *for Standard Chartered Bank*.

Dwight A. Healy, White & Case LLP, *for Amici Curiae Institute of International Bankers, The Clearing House, European Banking Federation,* and *New York Bankers Association*.

———————————————

-3-

CHIN, *Circuit Judge*

These appeals, heard in tandem, challenge two orders entered in the United States District Court for the Southern District of New York (Carter, *J.*, and Rakoff, *J.*), holding that the separate entity rule precludes a court from ordering a garnishee bank with branches in New York to turn over or restrain assets of judgment debtors held in foreign branches of the bank. In both cases, the plaintiff judgment creditors ("plaintiffs") contend that the decision of the New York Court of Appeals in *Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533 (2009), makes clear that post-judgment relief under Article 52 of the New York Civil Practice Law and Rules ("CPLR") is dependent only on personal jurisdiction over the garnishee banks, and therefore its remedies are available to reach property of judgment debtors held in foreign branches of those banks. The defendant garnishee banks ("defendants") argue that *Koehler* did not silently overrule New York's longstanding separate entity rule as applied to banks with branches in New York and other countries.

These appeals present the following unresolved questions of New York law:

*First*, whether the separate entity rule precludes a judgment creditor from ordering a garnishee bank operating branches in New York to turn over a debtor's assets held in foreign branches of the bank; and

*Second,* whether the separate entity rule precludes a judgment creditor from ordering a garnishee bank operating branches in New York to restrain a debtor's assets held in foreign branches of the bank.

Because these unresolved questions implicate significant New York state interests and are determinative of these appeals, we reserve decision and certify these questions to the New York Court of Appeals.

*BACKGROUND*

**A.**    ***CPLR Article 52 and the Separate Entity Rule***

CPLR article 52 governs the enforcement and collection of money judgments in New York.  *See N.Y.* C.P.L.R. 5201 *et seq.* (McKinney 2013).  Sections 5222 and 5225(b) apply to third parties that possess assets in which a judgment debtor has an interest.  Section 5222 authorizes the issuance of a restraining notice to prohibit a third party from disposing of a debt owed to the judgment debtor for one year after service of the restraining notice or until the judgment is satisfied or vacated, whichever comes first.[1]  Section 5225(b) allows a judgment

---

[1]    C.P.L.R. § 5222 provides, in relevant part:

creditor to commence a proceeding to order a third party to turn over the judgment debtors' assets.[2] As the New York Court of Appeals explained in *Koehler*, "article 52 postjudgment enforcement involves a proceeding against a person -- its purpose is to demand that a person convert property to money for payment to a creditor." 12 N.Y.3d at 538. Accordingly, "personal jurisdiction is

---

> A restraining notice served upon a person other than the judgment debtor or obligor is effective only if, at the time of service, he or she owes a debt to the judgment debtor or obligor . . . or if the judgment creditor . . . has stated in the notice that a specified debt is owed by the person served to the judgment debtor or obligor . . . . Such a person is forbidden to make or suffer any sale, assignment or transfer of, or any interference with, any such property, or pay over or otherwise dispose of any such debt, to any person other than the sheriff or the support collection unit . . . except upon the direction of the sheriff or pursuant to an order of the court, until the expiration of one year after the notice is served upon him or her, or until the judgment or order is satisfied or vacated, whichever event first occurs.

N.Y. C.P.L.R. § 5222(b) (McKinney 2013).

[2] C.P.L.R. § 5225(b) provides, in relevant part:

> Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property . . . the court shall require such person to pay the money . . . to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff.

N.Y. C.P.L.R. § 5225(b) (McKinney 2013).

the linchpin of authority under section 5225(b)." *Commw. of the N. Mariana Islands v. Canadian Imperial Bank of Commerce*, 21 N.Y.3d 55, 64 (2013) *("NMI").*

Nevertheless, New York courts have long applied the separate entity rule to garnishee banks operating branches both in New York and elsewhere. The rule provides that even if a bank is subject to personal jurisdiction due to the presence of a New York branch, the other branches of the bank will be treated as separate entities for certain purposes, such as attachments, restraints, and turnover orders.[3]  Indeed, as the rule has been historically applied, even branches of a bank located in the same city are separate entities for purposes of attachment.[4]  Although the rule has no apparent mooring in the text of the CPLR,

---

[3]    *See, e.g.*, *In re Nat'l Union Fire Ins. Co. of Pittsburgh Pa. v. Advanced Emp't. Concepts*, 703 N.Y.S.2d 3, 4 (1st Dep't 2000) (applying the "long-standing general rule in New York that each bank is a separate entity and that in order to reach a particular bank account, the branch of the bank where the account is maintained must be served"); *Cronan v. Schilling*, 100 N.Y.S.2d 474, 476 (Sup. Ct. N.Y. Cnty. 1950), *aff'd*, 126 N.Y.S.2d 192 (1st Dep't 1953) ("The law seems well established that . . . . for purposes of attachment, among others, each branch of a bank is a separate entity, in no way concerned with accounts maintained by depositors in other branches or at the home office."); *see also Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.*, 341 F.2d 50, 52-53 (2d Cir. 1965) ("A review of the New York cases indicates a consistent line of authority holding that accounts in a foreign branch bank are not subject to attachment or execution by the process of a New York court served in New York on a main office, branch, or agency of the bank.").

[4]    *See Sabre Shipping Corp.*, 341 F.2d at 53-54 (noting "both the theory and the policy of the rule . . . apply with almost equal force to attachment of bank accounts at other branch offices within New York City" (citing *Chrzanowska v. Corn Exch. Bank*, 159 N.Y.S. 385 (1916)).

the principle that branches of banks are regarded as separate entities for some purposes is reflected in New York's Uniform Commercial Code.[5]

The original rationale for the rule was that "[e]ach time a warrant of attachment is served upon one branch, every other branch and the main office would have to be notified[,] . . . plac[ing] an intolerable burden upon banking and commerce, particularly where the branches are numerous, as is often the case." *Cronan v. Schilling*, 100 N.Y.S. 2d 474, 476 (Sup. Ct. N.Y. Cnty. 1950), *aff'd*, 126 N.Y.S.2d 192 (1st Dep't 1953). In *Digitrex, Inc. v. Johnson*, the Southern District of New York (Knapp, *J.*) concluded that the separate entity rule was outdated in light of technological advances in the banking industry. 491 F. Supp. 66, 69 (S.D.N.Y. 1980) (holding restraining notice served on bank's main office sufficient and legally effective, as applied to assets in branch of bank). State and federal courts applying New York law have limited *Digitrex*'s reach, however, and apply its exception to the separate entity rule only where "the restraining notice is served on the bank's main office; the main office and the branches where the accounts in question are maintained are *within the same jurisdiction;* and the bank branches are connected to the main office by high-speed computers and are

---

[5]     *See, e.g.*, N.Y. U.C.C. § 4-A-105(1)(b) (McKinney 2013) ("A branch or separate office of a bank is a separate bank for purposes of this article.").

under its centralized control." *In re Nat'l Union Fire Ins. Co. of Pittsburgh Pa. v. Adv. Emp't. Concepts*, 703 N.Y.S. 2d 3, 4 (1st Dep't 2000) (emphasis in original).[6] Accordingly, courts have routinely applied the separate entity rule to post-judgment proceedings involving branches of banks in different sovereign nations.[7]

**B.    *Tire Engineering and Distribution, L.L.C. v. Bank of China Ltd.***

On October 28, 2010, the District Court for the Eastern District of Virginia entered a judgment in favor of Tire Engineering and Distribution, L.L.C. ("Tire Engineering") against six foreign companies based in China and Dubai (the "judgment debtors") for copyright infringement and conversion. The Fourth Circuit affirmed in part, upholding the jury's $26 million damages award. *See Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292 (4th Cir. 2012). The judgment debtors have refused to pay the judgment.

---

[6]    *See also Limonium Mar., S.A. v. Mizushima Marinera*, S.A., 961 F. Supp. 600, 607-08 (S.D.N.Y. 1997) ("A rule providing that service of a restraining notice on one bank branch (e.g., New York) suffices to reach assets in another bank branch in a city in a different country (e.g., London) would cause substantial interference with routine banking business, and no case has been cited . . . where such a restraint was held to be effective.); *Therm-X-Chem. & Oil Corp. v. Extebank*, 444 N.Y.S.2d 26 (2d Dep't 1981) (applying rule to bank without centralized system).

[7]    *See, e.g., Fidelity Partners, Inc. v. Philippine Export & Foreign Loan Guarantee Corp.*, 921 F. Supp. 1113, 1120 (S.D.N.Y. 1996) (applying separate entity rule to branches in different countries because New York branch has "neither control nor managerial direction over . . . [the extraterritorial] main office").

Tire Engineering eventually learned that one of the judgment debtors had assets at the Bank of China ("BOC"). BOC is controlled and owned, at least in part, by the People's Republic of China. BOC operates two branches in New York City.

On December 18, 2012, Tire Engineering filed this action in the Southern District of New York seeking a turnover order against BOC pursuant to CPLR § 5225(b), alleging that BOC possesses assets of at least one of the judgment debtors. Tire Engineering asked that BOC be ordered to turn over "all money or other personal property in its possession in which one or more of the [j]udgment [d]ebtors have an interest, regardless of whether [BOC] possesses that money or other personal property in New York, China, the United Arab Emirates, or elsewhere." First Amend. Compl. ¶ 40. Tire Engineering also served a restraining notice on BOC pursuant to Federal Rule of Civil Procedure 69(a) and CPLR § 5222, prohibiting it from selling, assigning, or transferring any property of the judgment debtors in its possession. The district court (Carter, *J.*) entered an order directing BOC to show cause as to why a preliminary injunction should not be granted.

In response, BOC confirmed it had no accounts or property belonging to any of the judgment debtors in its New York branches. BOC filed a

motion to dismiss, arguing, among other things, that the separate entity rule precluded the relief Tire Engineering requested. Further, it argued that a preliminary injunction was inappropriate due to the substantial harm that freezing assets belonging to the judgment debtors would cause BOC. In support, BOC submitted declarations of two professors, explaining that Chinese banking laws prohibit Chinese commercial banks from complying with U.S. court orders by freezing customer bank accounts in China and that accordingly BOC could face regulatory sanctions and civil litigation in China if it complied with the turnover order.

On April 12, 2013, the district court granted BOC's motion to dismiss, holding that the separate entity rule precluded Tire Engineering's request for relief. The district court granted Tire Engineering's request for a stay pending appeal, permitting the restraining notice to remain in place until the appeal was decided.

C.   *Motorola Credit Corp. v. Standard Charter Bank*

Between April 1998 and September 2000, members of the Uzan family (the "Uzans") induced Motorola Credit Corporation ("Motorola") to loan more than $2 billion to a Turkish company they controlled. *See Motorola Credit Corp. v. Uzan*, 274 F. Supp. 2d 481, 490 (S.D.N.Y. 2003). The Uzans diverted much

of these funds.  *Id.*  On July 31, 2003, the district court (Rakoff, *J.*) entered a

judgment against the Uzans in favor of Motorola for compensatory damages in

the amount of $2,132,896,905.66.  *Id.* at 580.  In addition, on June 20, 2006, the

district court awarded Motorola $1 billion in punitive damages.  *See Motorola

Credit Corp. v. Uzan*, 413 F. Supp. 2d 346, 353 (S.D.N.Y. 2006).

The Uzans have attempted to avoid paying these judgments.  *See

Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 127 (2d Cir. 2009) (finding the Uzans

"have persistently endeavored to evade the lawful jurisdiction of the District

Court and undermine its careful and determined work").  Indeed, the Uzans

remain in contempt of court for failure to comply with the District Court's orders

and are subject to arrest if they enter the United States.  *See id.* at 128.  Motorola

has accordingly pursued collection of the judgment through independent

investigation and third-party discovery, and the district court has conducted

post-judgment proceedings *ex parte* and under seal.  On February 13, 2013, the

district court issued a restraining order pursuant to Federal Rules of Civil

Procedure 65 and 69 and CPLR § 5222, enjoining the Uzans, their agents, and

anyone with notice of the order from selling, assigning, or transferring their

property (the "restraining order").  The restraining order prohibited any parties

served with it from disclosing the restraining order or its contents to the Uzans.

Motorola served the restraining order on Standard Chartered Bank ("SCB"). SCB is a foreign banking corporation, incorporated under the laws of and headquartered in the United Kingdom, with branches in many countries, as well as a branch in New York. SCB did not find any Uzan property in its New York branch. After a global search in late April 2013, however, SCB identified relevant assets connected with its branches in the United Arab Emirates ("U.A.E."). Motorola asked SCB to freeze the assets. As SCB sought to comply with the restraining order, regulatory authorities in Jordan and the U.A.E. intervened. The Central Bank of Jordan sent an auditor to seize documents from SCB's branch office in Jordan. The U.A.E. Central Bank debited SCB's account with its bank.

On May 14, 2013, SCB filed a motion for relief from the restraining order. SCB argued, among other things, that placing a restraint on the repayment of the interbank placements is contrary to the law in the U.A.E. and subjects SCB to legal and regulatory risk. Further, it argued that, in light of the separate entity rule, the restraining order should not have extraterritorial reach. Finally, SCB argued that subjecting its foreign branches to the restraining order violates the Due Process Clause of the Fourteenth Amendment by exposing SCB to double liability.

In a sealed order dated May 30, 2013, the district court found, in relevant part, that the separate entity rule precludes Motorola from restraining assets held by SCB's foreign branches. Noting that the law was unsettled as to the viability of the separate entity rule, the district court stayed the release of the restraint on the assets pending appeal. The district court subsequently issued a sealed opinion, explaining its order in more detail.

These appeals followed.

## DISCUSSION

### A. *Applicable Law*

#### 1. *Standard of Review*

We review an appeal from a district court's interpretation of questions of state and federal law *de novo*. *Am. Intern. Group, Inc. v. Bank of Am. Corp.*, 712 F.3d 775, 778 (2d Cir. 2013).

#### 2. *Certification to the New York Court of Appeals*

This Court may certify questions "where the New York Court of Appeals has not spoken clearly on an issue and we are unable to predict, based on other decisions by New York courts, how the Court of Appeals would answer a certain question." *Giordano v. Market Am. Inc.*, 599 F.3d 87, 100 (2d Cir. 2010). "The Local Rules of the New York Court of Appeals permit certification of

questions by this court when we encounter 'determinative questions of New York law . . . for which no controlling precedent of the Court of Appeals exist.'" *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 450 (2d Cir. 2013) (quoting N.Y. Ct. App. Local R. 500.27(a)).

Certification is appropriate "'where an unsettled question of state law raises important issues of public policy, where the question is likely to recur, and where the result may significantly impact a highly regulated industry.'" *Cruz v. TD Bank, N.A.*, 711 F.3d 261, 267-68 (2d Cir. 2013) (quoting *State Farm Mut. Auto. Ins. Co. v. Mallela*, 372 F.3d 500, 505 (2d Cir. 2004)). In deciding whether to certify a question, we consider: "(1) whether the New York Court of Appeals has addressed the issue and, if not, whether the decisions of other New York courts permit us to predict how the Court of Appeals would resolve it; (2) whether the question is of importance to the state and may require value judgments and public policy choices; and (3) whether the certified question is determinative of a claim before us." *In re Thelen LLP*, 736 F.3d 213, 224 (2d Cir. 2013) (quoting *Barenboim v. Starbucks Corp.*, 698 F.3d 104, 109 (2d Cir. 2012)).

**B.** *Application*

We conclude that these appeals turn on unsettled and important questions of New York law. Accordingly, we certify those questions to the New York Court of Appeals.

**1.** *The Absence of Controlling Precedent*

The New York Court of Appeals has never addressed whether the separate entity rule applies to post-judgment enforcement proceedings. Indeed, it has not explicitly addressed the separate entity rule in any context. Instead, it has affirmed, without opinion, intermediate courts' application of the separate entity rule in cases that did not involve post-judgment enforcement proceedings. *See McCloskey v. Chase Manhattan Bank*, 11 N.Y.2d 936 (1962) (affirming denial of plaintiff's request for order of attachment against deposit account at bank branch in Germany by serving warrant of attachment on bank's office in New York City); *Chrzanowska v. Corn Exch. Bank*, 159 N.Y.S. 385, 387 (1st Dep't 1916), *aff'd*, 225 N.Y. 728 (1919) (interpreting provisions of New York Banking Law and finding "different branches were as separate and distinct from one another as from any other bank"). Accordingly, despite its application by lower courts discussed above, the New York Court of Appeals has never unequivocally approved or disapproved of the separate entity rule.

The New York Court of Appeals has instructed that in determining "the expanse of section 5225(b) [the] 'starting point' is 'the language itself, giving effect to the plain meaning thereof.'" *NMI*, 21 N.Y.3d at 60 (quoting *Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 91 N.Y.2d 577, 583 (1998)). As plaintiffs point out, the plain language of Sections 5222 and 5225(b) supports the authority of New York courts to order garnishee banks subject to personal jurisdiction in New York to turn over or restrain judgment debtors' assets. Article 52 makes no specific references to foreign banks operating New York branches, and the separate entity rule is not the product of a textual analysis of the CPLR. Instead, it is a judicially created doctrine reflecting policy considerations over time, as discussed below. Accordingly, while we are mindful that the New York Court of Appeals has determined that "the failure of the legislature to include a term in [article 52] is a significant indication that its exclusion was intended," *NMI*, 21 N.Y.3d at 60, we find this principle inapposite for a wholly judicially created doctrine not tethered to the CPLR's text.

Plaintiffs contend that the decision of the New York Court of Appeals decision in *Koehler* settles the issues we face here. In *Koehler*, the Court addressed the question, certified by this Court, "whether a court sitting in New York may order a bank over which it has personal jurisdiction to deliver stock

certificates owned by a judgment debtor (or cash equal to their value) to a judgment creditor, pursuant to CPLR article 52, when [the] stock certificates are located outside New York." *Koehler*, 12 N.Y.3d at 536. Answering the question in the affirmative, the *Koehler* Court explained that "the Legislature intended CPLR article 52 to have extraterritorial reach" and "the key to the reach of the turnover order is personal jurisdiction over a particular defendant." *Id.* at 539-40. In short, the *Koehler* Court concluded that "[a] New York court has the authority to issue a turnover order pertaining to extraterritorial property, if it has personal jurisdiction over a judgment debtor in possession of the property." *Id.* at 540 (internal quotation marks and citation omitted). Plaintiffs urge us to find that this holding in *Koehler* definitively forecloses the application of the separate entity rule to post-judgment enforcement proceedings. While we acknowledge that *Koehler* may be so read,[8] we decline to reach the issue.

The separate entity rule was briefed in *Koehler*. *See* Br. of the Clearing House Ass'n L.L.C. as *Amicus Curiae* in Support of Respondent, *Koehler*, 12 N.Y.3d 533 (No. 2009-0082), 2009 WL 1615261 at *18 ("The Court should not answer the certified question in a manner that conflicts with the separate entity

---

[8]    *See, e.g., JW Oilfield Equip., LLC v. Commerzbank, AG*, 764 F. Supp. 2d 587, 595 (S.D.N.Y. 2011).

-18-

rule."). The deeply divided *Koehler* Court did not, however, address the issue. In light of the longstanding application of the separate entity rule in New York, as discussed above, we doubt that the Court of Appeals intended to silently overrule the doctrine.[9] New York courts considering the rule's application to post-judgment enforcement orders after *Koehler* have so held.[10]

Moreover, on the facts before it, the Court in *Koehler* did not need to address the separate entity rule. The defendant in *Koehler* was a foreign bank that had consented to personal jurisdiction in New York through the service of its wholly owned New York subsidiary. *Koehler*, 12 N.Y3d at 536. Further, the judgment creditor in *Koehler* sought the turnover of physical stock certificates in the bank's possession. *Id.* As the separate entity rule precludes courts from ordering *branches* of foreign banks to turn over or restrain *assets in a judgment*

---

[9] Indeed, prior to *Koehler*, the First Department recognized that an extension of exceptions to the separate entity rule "would require . . . a pronouncement from the Court of Appeals or an act of the Legislature." *In re Nat'l Ins. Co. of Pittsburgh, Pa.*, 703 N.Y.S.2d at 3; *accord Sabre Shipping Corp.*, 341 F.2d 53 (refusing to abandon the separate entity rule because "[w]e may not alter an established rule of New York law when there has been no indication by the New York lawmakers that they have changed their point of view").

[10] *See, e.g., Global Tech., Inc. v. Royal Bank of Canada*, No. 150141/2011, 2012 WL 89823, at *13 (Sup. Ct. N.Y. Cnty. Jan. 11, 2012); *Samsun Logix Corp. v. Bank of China*, No. 105262/10, 2011 WL 1844061, at *4 (Sup. Ct. N.Y. Cnty. May 12, 2011); *Parbulk II AS v. Heritage Maritime, SA*, 935 N.Y.S.2d 829, 832 (Sup. Ct. N.Y. Cnty. 2011); *see also Shaheen Sports, Inc. v. Asia Ins. Co., Ltd.*, Nos. 98-cv-5951 LAP, 11-CV-920 LAP, 2012 WL 919664, at *4-*5 (S.D.N.Y. Mar. 14, 2012).

*debtor's account*, nothing required the *Koehler* Court to consider the rule's application to a foreign bank operating a subsidiary in New York that was ordered to turn over stock certificates it physically possessed. Here, in contrast, plaintiffs' claims turn on the crux of the separate entity rule -- whether defendants are subject to post-judgment enforcement orders where they operate a branch in New York and hold assets of judgment debtors in accounts in foreign branches.

Although both parties present theories as to why the Court in *Koehler* did not address the separate entity rule, only the Court of Appeals can tell us definitively the significance -- if any -- of its decision not to address the question, whether it intended to silently overrule the doctrine, and whether the rule applies to post-judgment enforcement orders. Accordingly, we conclude that there is no "controlling precedent" in New York that governs this case.

### 2. *The Certified Questions Involve Important Issues of State Law*

The questions presented by these appeals involve important issues of New York state law and policy that are likely to recur and may have important effects on a highly regulated industry. Indeed, the separate entity rule is a judicially created doctrine that reflects policy choices over time and courts, the legislature, and the banking industry in New York and abroad may have

acquiesced in or relied on its principles. Hence, we find certification here is particularly compelling.

As defendants and *amici* note, international banks are subject to the competing laws of multiple jurisdictions, and turnover or restraining orders by New York courts may cause conflicts with the regulations, laws, and policies of other sovereign jurisdictions. As SCB's experience highlights, in complying with post-judgment orders from United States courts, banks may face regulatory and financial repercussions and due process concerns in foreign jurisdictions.[11] Moreover, as *amici* point out, the original concern that treating all branches of a bank as a single entity would place an "intolerable burden upon banking and commerce," *Cronan*, 100 N.Y.S.2d at 476, may still be relevant for world-wide post-judgment orders. State courts continue to acknowledge that banks face practical constraints and considerable costs in determining whether a judgment

---

[11]    *See, e.g., Global Tech., Inc.*, 2012 WL 89823, at *13 ("The separate entity rule can be harmonized with the modern due process framework of personal jurisdiction, when the separate entity rule is understood as akin to a rule governing service of process."); *Samsun*, 2011 WL 1844061, at *6 (explaining due process concerns for garnishee-banks exposed to double liability); *accord Shaffer v. Heitner*, 433 U.S. 186, 212 (1977) ("[A]ll assertions of state-court jurisdiction must be evaluated according to the standards [of fair play and substantial justice] set forth in International Shoe and its progeny.").

debtor's property is located in any branch in the world.[12]  Finally, *amici* contend

that the applicability, or not, of the separate entity rule to post-judgment

enforcement orders may have unintended consequences for New York's banking

industry and New York courts.  A decision that branches of a bank anywhere in

the world are subject to post-judgment enforcement orders if that bank maintains

a New York branch could potentially affect decisions of international banks to

maintain New York branches.[13]

On the other hand, as plaintiffs argue, the original basis for the

separate entity rule may have weakened or even disappeared over time.  Further,

as plaintiffs' experiences show, the applicability of the rule may facilitate efforts

of judgment debtors to frustrate and evade the collection of judgments.  Indeed,

Motorola has been attempting to collect its judgment from the Uzans for nearly a

decade.  Moreover, the rule may permit banks operating branches in New York

_____

[12]      *See, e.g., Samsun*, 2011 WL 1844061, at *4 ("[T]he banks submitted numerous affidavits to the effect that the computer systems in the New York branches of the Banks do not provide access to customer account information at the head office or at branches outside of the United States."); *Lok Prakashan Ltd. v. India Abroad Publ's Inc.*, No. 00 Civ. 5852(LAP), 2002 WL 1585820, at * 1 (S.D.N.Y. July 16, 2002) ("The Bank's New York branch does not have access to any information for accounts in the Bhadra branch.").

[13]      *See* Damien H. Weinstein, Comment, *New York: The Next Mecca for Judgment Creditors? An Analysis of* Koehler v. Bank of Bermuda Ltd., 78 FORDHAM L. REV. 3161, 3200 (2010).

to avoid the consequences of choosing to do business in New York and provide a competitive advantage to foreign banks. Indeed, courts in New York have suggested that the risk of double liability is "'assumed as part of the business of a bank.'" *JPMorgan Chase Bank, N.A. v. Motorola, Inc.*, 846 N.Y.S.2d 171, 184 (1st Dep't 2007) (quoting *Petrogardsky Mejdunarodny Kommerchesky Bank v. Nat'l City Bank of N.Y.*, 253 N.Y.2d 23, 40 (1930) and noting "the risk [arising from disputes over title to deposit accounts] is a foreseeable one that banks presumably consider").

Both sides raise important policy concerns, and questions involving such policy concerns, we believe, are more appropriately resolved by the Court of Appeals. *See Barenboim*, 698 F.3d at 117.

### 3. *The Answers to the Certified Questions May Be Determinative*

The response of the Court of Appeals to the certified questions will likely determine the outcome of these appeals. Specifically, if the Court of Appeals holds that the separate entity rule is not applicable to turnover orders pursuant to § 5225(b) or to restraining orders pursuant to § 5222, then the district court orders will be vacated. On the other hand, if the Court of Appeals determines that the separate entity rule is applicable to turnover orders,

restraining orders, or both, the district court orders will be upheld accordingly and plaintiffs' requests for relief denied.

## *CONCLUSION*

In sum, we reserve decision and certify the following questions for these tandem cases to the New York Court of Appeals:

*First*, whether the separate entity rule precludes a judgment creditor from ordering a garnishee bank operating branches in New York to turn over a debtor's assets held in foreign branches of the bank; and

*Second,* whether the separate entity rule precludes a judgment creditor from ordering a garnishee bank operating branches in New York to restrain a debtor's assets held in foreign branches of the bank.

We do not bind the Court of Appeals to the particular questions stated. Rather, the Court of Appeals may expand the certified questions to address any other issues that may pertain to the circumstances presented in these appeals.

This panel retains jurisdiction and will consider any issues that remain on appeal once the New York Court of Appeals has either provided us with guidance or declined certification.

It is therefore ORDERED that the Clerk of this Court transmit to the Clerk of the Court of Appeals of the State of New York a Certificate, as set forth below, together with complete sets of briefs and appendices, and the records filed in this Court by the parties.

*CERTIFICATE*

The foregoing is hereby certified to the Court of Appeals of the State of New York pursuant to Second Circuit Local Rule 27.2 and New York Codes, Rules, and Regulations Title 22, § 500.27(a), as ordered by the United States Court of Appeals for the Second Circuit.